## LEVI G. NORTHROP vs. ABRAM J. KNOWLES.

Evidence that a man and woman, who had lived together as husband and wife, were reputed not to have been married but to have been cohabiting unlawfully, it is not admissible against proof of a formal marriage.

Reputation of adulterous relations is not admissible as primary proof, but only in aid of or incidential to substantive proof.

A certificate of marriage is treated in this state as an original document, and need not be authenticated as a copy.

[Argued March 4th—decided March 12th, 1885.]

ACTION to recover the possession of land with rents and profits; brought to the Superior Court in Litchfield County, and tried to the court before *Stoddard, J.* Facts found and judgment rendered for the plaintiff. Appeal by the

defendant on the ground of error in the rulings of the court. The case is fully stated in the opinion.

*H. W. Taylor*, for the appellant.

*L. D. Brewster*, for the appellee.

Loomis, J.   The record shows that upon the trial of this case the plaintiff claimed title to the land in question under the will of Friend G. Northrop, which was the subject of construction by this court in *Turrill* v. *Northrop*, 51 Conn., 33.

The plaintiff's title depended on the question whether he was the legitimate son of Gad G. Northrop and his wife, whose maiden name was Cordelia Dennis.   The plaintiff in chief offered direct proof of the marriage of Gad Northrop and Cordelia Dennis, including the testimony of Cordelia and what purported to be the certificate of the magistrate performing the marriage ceremony, and at no stage of the trial did he offer any evidence of reputation to prove the marriage.   But the defendant, on his part, to disprove the marriage and to show that the plaintiff was illegitimate, offered the testimony of Harriet Curtis and others, that after the alleged marriage the said Gad and Cordelia were reputed in the neighborhood and locality where they resided to be unmarried, and that they were reputed to be not husband and wife, but to be living in a state of illicit intercourse.

The first question for review is whether this evidence of reputation was properly excluded by the court upon the plaintiff's objection ?

We have no doubt it was.   The plaintiff's case on this point rested solely upon direct evidence of a formal, ceremonial solemnization of marriage between his parents at a specified time and place, and it is too obvious to require discussion that such evidence could not in the least be affected by any amount of evidence that they were reputed to have been unmarried.   The strongest objection ever

made against hearsay evidence would apply to such a case as this, for, if the defendant's position is correct, a marriage solemnized according to all the forms of law might in effect be nullified by the mere speech of people.

The reasoning in behalf of the defendant is based upon the fallacy that because general reputation of parties as husband and wife, in connection with other circumstances, is admissible to prove marriage, therefore general reputation must also be admissible to prove that there was no marriage; but there is a vast difference between reputation as primary proof of an existing fact or relation and reputation as applied to prove a mere negative. Reputation in connection with other things is admissible to prove marriage, because, among other reasons it attends, and indicates the reality, as a shadow does the substance, but a non-existing thing casts no shadow.

But it may be suggested that in this case the evidence was offered to prove, not simply a negative, but an adulterous relation. This again overlooks another fundamental reason why reputation and cohabitation furnish presumptive evidence of marriage, which is, that the law presumes against vice and immorality and in favor of marriage. The contention of the defendant would revolutionize this wholesome principle and obliterate all distinction between vice and virtue, concubinage and marriage, as furnishing the basis for presumption.

But it may be asked, has reputation no office as tending to disprove marriage? Not where an actual, ceremonial marriage is relied upon, as in this case.

But where marriage is attempted to be established by reputation we think the defendant might be allowed to weaken the evidence by showing that the reputation was not general but was divided, but even in such case the authorities restrain the negative evidence within narrow limits. In *Badger* v. *Badger*, 88 N. York, 547, the action was for the admeasurement of dower, and the plaintiff's right depended on the fact of marriage with the deceased. The plaintiff's evidence showed long continued cohabita-

tion, characterized by reputation and conduct to show that it was matrimonial. But it seemed that the deceased lived two lives. The cohabitation was under an assumed name. At the same time the deceased among his own friends and relatives, known by his true name, occupied rooms and lived as a bachelor. It was held error in the court below to permit evidence to show that the deceased was reputed a bachelor among his friends and relatives, as it did not explain or show the character of the cohabitation.

And this suggests another principle which is also decisive of the question under discussion. Reputation of adulterous relations is not admissible as primary proof, but only as subsidiary, or in aid of and incidental to substantive proof, where it may explain or account for the conduct of parties towards each other. This proposition is established by the following authorities. *Marble* v. *Marble*, 36 Mich., 386; *Clement* v. *Kimball*, 98 Mass., 536; Wharton's Evidence, § 255.

The next question is presented by the finding as follows: "Said Cordelia was introduced by the plaintiff as a witness and testified that she was married to said Gad on the 9th day of March, 1850," (giving the place and name of the officiating magistrate).. The plaintiff then offered in evidence the certificate of marriage, accompanying the offer with the question put to the witness, to examine it and state whether it was the certificate which the messenger brought back who was sent to the magistrate for it the day after the marriage. The defendant objected to the certificate on the ground that it should have been authenticated in the proper way, but made no other objection, and it was received by the court.

In this jurisdiction from the earliest times the practice has been to receive as evidence the marriage certificate itself, just as it was issued to the party, signed by the magistrate or other officer performing the ceremony, but without other authentication. In Swift's Evidence, p. 5, this is said to be common law in Connecticut. It is too late now to call it in question, if we were so disposed, but we think

the rule has worked well and that to change it would cause much trouble and inconvenience. The practice is, we apprehend, founded upon a distinction between a certificate of this character and ordinary copies from the records of magistrates. In the latter case the document offered in evidence is a mere copy from a record preserved by the magistrate, which copy would of course require authentication in the usual form. In the former the certificate is itself of the nature of an original document, like the certificate of registrars that a person has been admitted as a voter, or of an appointing power that a person has been appointed to an office. There may be back of these certificates, and usually is, a record preserved by the officials issuing the certificate, but it has been the practice to receive such certificates, without authentication beyond proof of their genuineness, as original documents.

The ruling of the court excluding the evidence as to the character and reputation of Cordelia for chastity was so obviously correct that it needs no further vindication.

There was no error in the judgment complained of.

In this opinion the other judges concurred.