CLARENCE L. BARBER *vs.* THE INTERNATIONAL COMPANY OF MEXICO.

First Judicial District, Hartford, March Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HALL and THAYER, Js.

In a suit for the appointment of a receiver of the defendant, a Connecticut corporation, the complaint alleged that the plaintiff was the assignee of a valid judgment for $120,000 which had been rendered against the defendant in California in 1892; that shortly before the California suit was begun the defendant conveyed all its assets to an English corporation, formed for that purpose by the defendant's stockholders, who thereupon exchanged their stock for shares in the English company; that the defendant was bankrupt, its only asset being the written promise of the solvent English company to assume and pay its debts; that in 1895 the plaintiff sued the English company and the defendant in Great Britain, upon said judgment, but the English court adjudged that such an action could not be maintained; that the two companies had been and still were acting in collusion to defeat the rights of the plaintiffs and other creditors in whose behalf the present suit was brought, and would be successful unless a receiver were appointed; and that such receiver, under the law, comity and practice of the courts of Great Britain, would be permitted to sue the English company there as effectually as could a resident suitor. *Held* that the complaint must be regarded, in substance, as an appeal to a court of chancery to secure the enforcement of a contractual right held by the defendant practically as a trustee, which it collusively refused to enforce in behalf of those who were equitably entitled to claim its benefits; and, so construed, was sufficient. (pp. 591–594.)

The plaintiff having filed the original assignment of the judgment in the office of the clerk of the court in California, it was *held* that such filing was equivalent to an assertion by him that it was a proper paper to be filed in the cause, and that it would be presumed, in absence of proof to the contrary, that he would not thereafter have been allowed to reclaim it. (p. 598.)

Barber *v.* International Co. of Mexico.

If a witness testifies that a document shown him is a true copy of the original, it is not necessarily a fatal objection to its reception that he did not compare the two; since his recollection of the terms of the original may be so perfect as to dispense with a comparison. (p. 598.)

A document containing erasures and interlineations does not cease to retain its character as an original, merely because a duplicate, perfect in form, is afterwards executed. Nor is the interlined original invalidated, as to third parties, by writing underneath the signatures the name of the witness and the form of acknowledgment which appeared upon the duplicate. (p. 598.)

Statements contained in the certificate of a clerk of court appended to a duly authenticated copy of record, that proceedings to review the judgment therein referred to had not been and could not now be taken, and that the judgment was final and bore interest at a certain rate, are mere hearsay and matter of opinion. (pp. 598, 599.)

The certificate in question asserted that the copy of record embraced all the files. *Held* that this was proper, and afforded *prima facie* evidence that no proceedings in review had been instituted. (p. 599.)

The defendant objected to the admission of the transcript of the record, which purported to contain a copy of the assignment of the California judgment to the plaintiff, as evidence of such assignment. *Held* that the objection should have been taken, not to the admission of the document, which the court was bound to admit in its entirety, but to the effect of the particular portion of the record setting forth the assignment. (p. 599.)

The decision of the trial judge, that an American attorney was sufficiently familiar with the law of a foreign country in respect to the particular matter before the court to enable him to testify what it was, will not be reviewed unless it is clearly unsupported by the evidence. (pp. 599, 600.)

If a document purporting to be the original contract is found in the office where the law required it to be deposited, and the signature of one of the parties thereto is identified as genuine, the inference is justifiable that the other signature was also an original one, and that such contract was in fact executed. (p. 600.)

A compared copy of such a document is admissible in evidence. (p. 600.)

Memoranda upon such copy which were not part of the original are inadmissible, but do not affect the competency of the copy. (p. 600.)

It is not essential that such copy should contain schedules attached to the original document, which, upon its face, appeared to be complete and effectual without reference to them. (p. 601.)

The admission of a document before giving opportunity for full cross-examination concerning it, falls within the discretion of the trial court. (p. 601.)

In the absence of statutory provision as to the mode of authenticating official copies of documents found in foreign registries or public offices, courts must be guided by the rules of the common law, or

Barber *v.* International Co. of Mexico.

the usages of nations. Any evidence calculated to give reasonable assurance that the document offered is in fact certified by the official custodian of the original of which it purports to be a copy, and that such custodian had due authority so to certify, is sufficient; and by the usages of civilized nations these facts are permitted to be proved by certificates of public officers under their official seals, when these seals are such that the court takes judicial notice of them. (p. 602.)

State courts may properly take judicial notice of the seals of notaries public and of United States consuls, in authenticating copies of documents in foreign public archives. (p. 602.)

An official attestation of the verity of a copy of a document in public archives was simply " A true copy." *Held* sufficient. (p. 603.)

The plaintiff offered to testify that he sued the defendant and the English company, jointly, in 1895, in England, seeking to have a trust declared against them and have the English company pay his judgment. *Held* that this evidence was material and relevant, and tended to show that the plaintiff had no adequate remedy by a suit in his own name for the collection of the California judgment. (p. 604.)

An exception to a ruling of the court admitting certain testimony, is not available, unless it appears from the record that the testimony objected to was in fact given. (p. 604.)

The simple fact of the insolvency of a corporation does not convert its assets into a trust fund for its creditors. (p. 593.)

A receiver of a corporation will not be appointed (except under a statute), unless the same relief would be given when claimed in an action against an unincorporated association of natural persons. (p. 593.)

A creditor of a corporation is not disqualified, by reason of such interest, from becoming its receiver. (p. 604.)

The decree in the present case not only appointed a receiver of all the property and assets of the defendant, but also limited a time within which claims not presented to the receiver were to be barred, and contained other provisions for winding up the affairs of the defendant. *Held* that inasmuch as equity never does anything by halves, these provisions were properly inserted, to the end that full and complete justice might be done between the corporation and its shareholders on the one hand and all of its creditors upon the other, all of whom were represented by the parties to the suit ; and that the general claim for relief was sufficient to justify the provision in the decree looking to the final distribution of whatever might be realized from the insolvent estate. (p. 605.)

A creditors' bill should allege either that the plaintiff has already obtained judgment upon his demand in this State, or ask for such judgment as a basis for further relief. (p. 593.)

It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They should be appointed only as ancillary to the enforcement of some equitable right. (p. 593.)

Barber v. International Co. of Mexico.

It is in the judgment file that one must look to ascertain the facts upon which the judgment rests, rather than to a special finding made for purposes of appeal, which presumably does not cover the whole ground, nor state every fact underlying the judgment. (p. 597.)

A judicial finding, if doubtful, should be so read as to make it harmonize with the judgment rendered, if the words used will fairly justify it. (p. 597.)

No statute is needed to give a court of equity power to wind up the affairs of an insolvent corporation, without dissolving it, where such relief is the only mode of doing complete justice between it and its creditors, in a cause otherwise fully within its jurisdiction, in which all parties in interest are present or represented. (p. 606.)

Argued March 6th—decided April 2d, 1901.

ACTION by a creditor for the appointment of a receiver of the defendant company, and for other relief, brought to the Superior Court in Hartford County where a demurrer to the complaint was overruled (*George W. Wheeler, J.*) and the case was afterwards tried to the court, *Robinson, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The facts averred in the complaint are sufficiently stated in the opinion. The claims for relief were as follows : —

" 1st. That a receiver be appointed to receive and collect all debts due to and other assets and property and effects belonging to the International Company of Mexico, and to enforce any rights belonging to said Company, and for any of the purposes aforesaid to bring and prosecute any actions, suits, or claims in the United States of America or in Great Britain or elsewhere, which may be necessary to obtain payment of the said debts or enforcement of the said rights of recovery of such assets, property, and effects. 2d. That leave be granted to sue said the English Company in the courts of Great Britain or elsewhere, either in the name of the plaintiff in this suit, or of such receiver or of the American Company, in order to enforce the rights aforesaid. 3d. Any other and further relief to which in the judgment of the court the plaintiff may be entitled."

The answer set up no new matter.

*Edward D. Robbins,* for the appellant (defendant).

*Charles E. Perkins* and *Lewis E. Stanton,* for the appellee (plaintiff).

BALDWIN, J. The defendant was incorporated under a special charter from this State. 10 Special Laws, 45, 433. The town of Hartford was thereby made its "legal location," and its capital was fixed at $500,000, with power to increase it to $20,000,000.

The complaint stated this case: In 1887 the defendant, under a contract made with one Bates, for a valuable consideration received from him, amounting to about $40,000, was bound to convey to him certain real estate in Mexico. It refused to do this, and in bad faith sold and conveyed the property to third parties, whereby it became liable to pay him just damages. In 1889 he sued it for these damages in the Circuit Court of the United States in California. It appeared and made defense, and he recovered final judgment, in 1892, for $121,282. Execution was issued and returned wholly unsatisfied. The defendant then was and ever since has been wholly insolvent. Shortly before the suit in California was brought, a company was organized in Great Britain, by the name of the Mexican Land and Colonization Company, Limited, which was located in London. It was organized mainly by the same persons who had been interested in the defendant company, and substantially for the same purposes. One of its objects was to acquire all the defendant's assets, and a contract between the two companies was immediately executed, whereby the defendant conveyed them to the English company and agreed to take the necessary steps for winding up its affairs and its dissolution, as quickly as possible, acting subject to the approval and at the expense of the English company, which in turn agreed to assume and pay all the defendant's obligations. All business thereafter done by the defendant was to be considered as done for the benefit of the English company, and was to be under the direction of the chairman of that company. The shares of the defend-

ant were to be exchanged for shares of the English company. This contract was fully performed, at once, except that the English company has not wound up the defendant company nor paid all its debts, though it has paid most of them. The defense of the California suit was conducted by, for, and at the expense of the English company, though in the name of the defendant. Since 1890 the defendant has had no stock, no stockholders, no office, no officers, and no funds, and has been substantially absorbed by the English company. The plaintiff, in 1892, became the legal owner of said judgment by assignment from Bates, made upon a valuable consideration. Due notice of the assignment was given to both companies, and the plaintiff has demanded payment of each, but it remains wholly unpaid. He has also requested the defendant to institute suit against the English company on its promise to pay the defendant's obligations, but this has been refused by collusion between the two companies. This promise is an asset of the defendant, and its only asset, and the plaintiff sues for the benefit of himself and all other creditors of the defendant. The English company is solvent and able to pay all the defendant's obligations. The plaintiff brought suit in 1895, before the High Court of Justice, Chancery Division, of Great Britain, against the English company on said judgment, and also against the defendant; but it was therein adjudged that he could not maintain such a suit. The two companies have acted and are acting in collusion, in order to defeat the rights of the plaintiff and other creditors; and there is danger that the assets of the defendant will be wholly lost and the rights of creditors completely defeated unless a receiver be appointed by this court. Such a receiver, under the law, comity, and practice of the courts of Great Britain, would be permitted to sue the English company therein as fully and effectually as could a resident suitor or a domestic corporation.

The specific relief claimed was the appointment of a receiver of all debts due to and other assets of the defendant, with authority to bring any necessary suits in the United

States or Great Britain, or elsewhere, either in his own name, or in that of the plaintiff or of the defendant.

This action cannot be supported as in the nature of a creditor's bill; for it is not alleged that the plaintiff has obtained any judgment upon his demand against the defendant in this State, nor does he now ask for any. *National Tube Works Co.* v. *Ballou*, 146 U. S. 517; *Vail* v. *Hammond*, 60 Conn. 374.

Nor can it be upheld as a proceeding by a mere general creditor for winding up the defendant's affairs. For such a purpose it would be necessary to invoke the jurisdiction of a proper court of insolvency or bankruptcy. Rules of Court, § 63. The simple fact of the insolvency of a corporation does not convert its assets into a trust fund for its creditors. *Pondville Co.* v. *Clark*, 25 Conn. 97.

In the absence of a statutory enlargement of equity jurisdiction, a receiver of a corporation will not be appointed unless the same relief would be given, when claimed in an action against an unincorporated association of natural persons. It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right.

Such a right appears from the complaint to belong to all the defendant's remaining creditors. The assets to which they would naturally have looked for payment have been transferred in exchange for the written obligation of the party receiving them. This party is virtually the defendant passing under another name and residing in another country. *Hibernia Ins. Co.* v. *St. Louis & N. O. Transp. Co.*, 3 McCrary, 368, 13 Fed. Rep. 516. The obligation runs to the defendant, but it creates a security which, while directly for its benefit, is indirectly for the benefit of its creditors. The defendant is not asking its performance. On the contrary, it is colluding with the other party to the contract to defeat any recovery of their demands by the creditors who are yet unpaid. Their rights against this third party are wholly derived from the contract. They have no lien on the assets

transferred. *Lamkin* v. *Baldwin & Lamkin Mfg. Co.*, 72 Conn. 57, 62. A release by the defendant to the English company would effectually discharge its legal obligation. It would be clearly inequitable under present circumstances to give such a release. Any creditor could ask for an injunction to prevent it. A claim for that relief might well have been made in the present action. But the remedy of an injunction, like that of the appointment of a receiver, presupposes the existence of some actionable right to preserve or enforce which an injunction or a receivership is necessary. Such a right may be a legal one, as in the case of a judgment creditor, moving by a creditor's bill. But in the present case it is purely equitable, since the legal remedy by reason of the assumption of the debt due to the plaintiff by the English company under the contract of merger, belongs to the defendant only.

To the extent of the assets received and not hitherto appropriated to paying the defendant's creditors, those of them who remain unpaid may have an equity enforceable against the English company, to establish a charge upon the funds, or otherwise secure its performance of the contract made, in a certain sense, for their benefit. *Warfield, H. & Co.* v. *Marshall C. C. Co.*, 72 Iowa, 666, 2 Amer. St. Rep. 263; *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70, 70 Northwestern Rep. 413. But they also have an equity enforceable against the defendant to compel it to lend its aid and do its part towards working out their beneficial rights. Collusion on its part to defeat these rights is constructive fraud. *Story* v. *Norwich & W. R. Co.*, 24 Conn. 94, 113.

Regarded in view of these principles of equitable jurisprudence and procedure, the plaintiff's complaint was properly adjudged sufficient. It is, in substance, an appeal to a court of equity to secure the enforcement of a contractual right which the defendant holds in what, under the circumstances, may fairly be regarded as a fiduciary capacity, and which it collusively refuses to enforce for the benefit of those who are equitably entitled to claim its benefits. 2 Mor. on Pri. Corp. § 787. The general creditors of the defendant occupy that

position.  *Marr* v. *Bank of West Tenn.*, 4 Coldw. 471, 484. None of them could maintain a suit at law against the English company upon its promise.  *Baxter* v. *Camp*, 71 Conn. 245.  If an equitable action could be supported, it would be necessary to make both the defendant and the English company parties.  Should such a suit be brought in Connecticut, no effectual process could issue against the English corporation.  Should it be brought in Great Britian, no effectual process could issue against the American corporation.

The defendant has stripped itself of all tangible property. It has no officers to conduct its affairs.  But its legal seat remains at Hartford, and its existence as an artificial person continues unchanged.  It is under heavy liabilities which it refuses to discharge, although possessing the right to require their discharge by a third party of ample ability.  It collusively declines to exercise this right.  Under these circumstances, the plaintiff had a right to the relief which he demanded in behalf of himself and all other creditors.  The only way to compel this moribund corporation to do equity is by placing it in the hands of a receiver.  He can do in its name what its board of directors could and should have done, but what, for want of such a board and by force of the contract of merger between the two companies, cannot otherwise be accomplished.  He can sue wherever the English company can be found, for the American company will then be a party through his act, either in name or by representation.  He can sue in the English courts, for that such is English law and practice is explicitly alleged, and statements as to what is foreign law are always statements of fact.  *Fish* v. *Smith*, 73 Conn. 377.

The jurisdiction of the Superior Court depended on the *situs*, not of the right of action against the English corporation, nor of any other asset belonging to the defendant, but of the defendant itself.  The action is for relief against its intentional omission to perform an equitable duty.

.The demurrer to the complaint was therefore properly overruled.

The judgment file recites that upon due hearing of the par-

ties with their witnesses all the issues were found in favor of the plaintiff.   Nearly six months after its date, a special finding was made for the purposes of this appeal, beginning thus : —

"FINDING OF FACTS.

" *First*. In the above entitled cause the following facts are found in addition to those admitted by the pleading and made a part of the record in the same :  (1) The judgment recovered by Frank E. Bates against the defendant, as admitted by paragraph 2 of the answer, was assigned by the said Frank E. Bates to the plaintiff on December 12th, 1892, by an instrument in writing, a copy of which is hereto annexed as Exhibit ' B.'   (2) On the 7th day of August, 1895, there was in Somerset House in London, England, a document on file, a copy of which (except of certain schedules forming a part of it) is hereto annexed as Exhibit ' C.'   (3) The plaintiff at different times before bringing this suit made diligent search for property of the defendant, both in California and Connecticut, and has been unable to find any property of the defendant, either in California or Connecticut.

" *Second*. The following conclusions have been reached : (1)  The Mexican Land and Colonization Company, Limited, is a corporation organized under the laws of the United Kingdom of Great Britain and Ireland.   There was, at the time of the bringing of this action, and is now in force between said corporation and the defendant a contract of which Exhibit ' C ' is a copy, except for certain schedules forming a part of said contract, but omitted from said copy.   (2) The defendant had no property either in California or in Connecticut at the time of bringing this action, and has none now ; and the defendant was then, and is now, insolvent, except this claim under said contract against the English company and the debt or obligation due from the English company to the American company, as set forth in the pleadings in the cause.

" *Third*. The following rulings were made upon the trial."

It is contended by the appellant that this special finding is the only finding of facts to support the judgment, and is in-

sufficient for that purpose. This claim ignores what is the vital office of a judgment file. It is there that one must look to ascertain the facts upon which the judgment rests. The judgment file in the present case states them in general words; but that, under our practice, was sufficient. Rules of Court, § 197. There is nothing in it which is inconsistent with the special finding. The latter was filed during a term subsequent to that at which the judgment was rendered. It simply sets forth, for purposes of an appeal, certain details respecting facts in issue which had been pleaded in general terms, and adds the conclusions reached as to several of those facts. It gives the terms of the assignment of the judgment, and of the contract of merger, and states that the plaintiff has searched for property of the defendant in California and Connecticut, and found none. It is not to be presumed that any such limited and meager finding was intended to express all that was meant by the general one contained in the judgment file, and on which the judgment rendered nearly six months before had been founded. *Corbett* v. *Matz*, 72 Conn. 610, 612. The introductory sentence, which states that " the following facts are found in addition to those admitted by the pleading and made a part of the record," must be taken to describe them as an addition to those the existence of which had been contested but was established by the judgment file; for none that were not thus ascertained had been made a part of the record. General Statutes, § 1111. No other construction of this language could be adopted without violating the rule that if the meaning of a judicial finding is doubtful, it should be so read, if the words used may fairly justify it, as to make it harmonize with the judgment rendered as its legal conclusion. *Finken* v. *Elm City Brass Co.*, 73 Conn. 423.

The plaintiff having testified upon the trial that he had received and filed in the office of the clerk of the Circuit Court of the United States for the Southern District of California a written assignment to himself from Bates, of the judgment of that court against the defendant, was asked if a paper which he produced was a true copy of it. No evidence was offered to show that he had endeavored to procure the original, nor

that he could not have reclaimed it, had he made such endeavor, nor that he had compared the paper offered with the original, notwithstanding which the court overruled the objection to the question and allowed the fact and terms of the assignment to be thus proved.

That he had not compared the two documents was not necessarily a fatal objection. It went only to the credibility of his testimony. His recollection of the terms of the original might have been so perfect that a comparison would be unnecessary.

The filing by the plaintiff of his assignment in the clerk's office was equivalent to an assertion by him that it was a proper paper to be filed in the cause; and it is to be presumed, in the absence of proof to the contrary, that he would not thereafter have been allowed to reclaim it.

The plaintiff was also properly allowed to introduce in evidence, as an assignment of the judgment, a document signed by Bates, which was a duplicate in terms of the assignment which had been filed in court. It appeared that after the execution of the former, on account of its containing a number of erasures and interlineations, the latter was made out, signed, witnessed and acknowledged before a magistrate, after which the plaintiff wrote upon the former the name of the witness and the form of acknowledgment, and retained it as a copy of the original.

The paper which Bates first signed and delivered was not deprived of its vitality, nor of its character as an original document, by the execution of the later one. That it was altered by writing under the signature the additions described, whatever might have been the effect of this as respects Bates, if done without his consent, did not, in the absence of proof that his consent was not obtained, invalidate it as to the judgment debtor.

The court received in evidence a certified copy, duly authenticated, of the files and records of the California suit. Among the files thus copied was the assignment of judgment, and the clerk's certificate contained statements that no proceedings to review the judgment had been taken, that it was

now too late to take any, and that the judgment had become absolutely final, and bore interest at the rate of seven per cent.

The defendant's objection to the admission of so much of the clerk's certificate as referred to proceedings of review, and to the legal effect of the judgment, was well taken. This was mere hearsay and matter of opinion. No injury, however, could have been done by this ruling. If a writ of error had been issued, it would have become part of the files.

The certificate that the copy embraced all the files was proper and at least *prima facie* evidence that no such proceedings had been instituted.

The statements as to the law of the United States could not have misled the Superior Court, which knew what that law is.

One of the objections taken by the defendant was that this document was not competent evidence of the existence of an assignment of the judgment from Bates, nor of the execution and delivery of such an assignment, and therefore that so much of it as purported to be a copy of the assignment, and that part of the clerk's certificate having reference to this, should be excluded.

The paper, as offered, was competent evidence of the existence of a writing constituting one of the files in the California action, which purported to be an assignment of the judgment and purported to have been executed and delivered. Being one of the files in the cause, the clerk was bound to include it in his transcript, and the Superior Court was bound to admit the entire document in evidence. The exception having been addressed to its reception, and not to its effect when admitted, was therefore properly overruled.

The plaintiff is a member of the bar in this country, and testified that he had spent three months in England in 1895 and the same period in 1896, and endeavored during such visits to familiarize himself with the laws of England in regard to the registration of contracts of corporations of the kind of that described in the complaint, consulted a solicitor in chancery and a barrister on that subject, and read one or

more Acts of Parliament containing provisions as to the registration of corporate documents. Thereupon, and after submitting to cross-examination as to his qualifications as an expert, he was allowed further to testify that under the English law it was necessary to register such a contract as the one in question, in the office of the registrar of English corporations in Somerset House in London.

The decision of the trial court that the witness knew enough of the foreign law in controversy to be allowed to testify as to what it was, is sufficiently supported by the testimony upon which it was based. *State* v. *Main,* 69 Conn. 123, 124.

The plaintiff then testified that he had visited Somerset House, and was shown at the registrar's office there a document of which he made a compared copy (except as to certain schedules attached to it), which he produced; that this document appeared to be an original agreement between the defendant and the Mexican Land and Colonization Company, Limited, with the original signatures in the handwriting of the persons executing the same in behalf of each; that he was acquainted with the handwriting of William Hamersley, and that in one of the signatures—" The International Company of Mexico by William Hamersley its Attorney in fact" —the name of William Hamersley was his original signature. The copy, which was thereupon admitted in evidence, purported to be a copy of a contract between the two companies such as was alleged in the complaint to have been made in 1889.

All this evidence was properly received. If what appeared to be the original contract in question was found in the office where the law of England required it to be deposited by the English company, and the signature of the agent who executed it in behalf of the American company was identified, the inference was justifiable that the other signature was also an original one, and that the contract alleged was in fact executed.

There are certain memorandums upon this paper which the witness testified were not upon the original, and which

were not offered in evidence. This did not render the copy inadmissible. Nor did the omission in the copy of the schedules attached to the original document; notwithstanding it declared that "the schedules set out hereunder shall be deemed part of this agreement." They constituted nevertheless a separate and distinct paper. The contract, so far as appeared upon its face, was complete and effectual without reference to them. The trial court was justified in presuming that they contained mere details of what it had stated in general terms, no claim having been made that they varied the meaning of the contract to which they were attached.

The admission of this copy when the witness was under direct examination, without first giving an opportunity for full cross-examination with regard to it, fell within the discretion of the court.

What purported to be a certified copy of both contract and schedules was also admitted in evidence. The certification purported to be signed by " Ernest Cleave, Assistant Registrar of Joint Stock Companies." The plaintiff testified that it was a copy of the original agreement mentioned in his complaint, and that he obtained ·it from the registrar's office. Appended to this document was a certificate purporting to be signed at London by J. W. P. Jauralde of London, as a notary public, under his official seal. This stated that the signature of Ernest Cleave was genuine, and affixed in the presence of the notary; that Cleave was assistant registrar of joint stock· companies; that the original agreement was pursuant to law filed with and kept by the registrar of joint stock companies; and that " the foregoing copy thereof so certified as aforesaid is duly authenticated according to law, and full faith and credit is and ought to be given thereto in court and without." A further certificate was appended purporting to be signed at London by John J. Collins, vice and deputy consul-general of the United States at London, under his seal of office. This stated that John William Peter Jauralde, who had signed the preceding certificate, was a notary public duly admitted and sworn and practicing in the city of London, and that full faith and

credit ought to be given to the certification so made, in judicature and without.

A similar certificate followed purporting to be signed at London by the consul of the Republic of Mexico, under his consular seal.

The statutes of this State make no provision as to the mode of authenticating official copies of documents found in foreign registries or public offices. General Statutes, §§ 1089, 1093, refer only to domestic entries, files, or records. Whether there has been a proper authentication of foreign ones must therefore be determined by the courts, as occasion may require, in such cases as arise, under the guidance furnished by the rules of the common law or the usages of nations.

The object of any such authentication is to afford satisfactory evidence that the document offered is in fact certified by the official custodian of the original of which it purports to be a copy, having due authority to make such certification. Any evidence is sufficient for this purpose which is calculated to give reasonable assurance of the facts in question. Of this nature is whatever legitimately tends to prove that the document was obtained from the office where the original is kept; that the signature of the certificate was made by the individual whose name is thus subscribed; that he held, at the time, the official position indicated by his subscription; and that it is one of the functions of those holding that position to certify to such copies. *State* v. *Dooris,* 40 Conn. 145.

It is difficult and expensive to produce oral testimony to these points, and hardly less so to resort to written depositions. By the usages of civilized nations, therefore, proof is allowed of all or some of them in the shape of certificates from public officers under their official seals, when these seals are such that the court takes judicial notice of them.

The seal of a notary public is one of this description, whenever it is used to attest a document which by the usages of nations may be so attested. *Ashcraft* v. *Chapman,* 38 Conn. 230, 232; *Pierce* v. *Indseth,* 106 U. S. 546, 549; *Spegail* v. *Perkins,* 2 Root, 274. A notary public, furthermore, is an officer to whom, in many countries, resort is had for certifi-

cates authenticating copies of documents in public archives. *Yeaton* v. *Fry*, 5 Cranch, 335; *Williams* v. *Conger*, 125 U. S. 397, 424; *Packard* v. *Hill*, 7 Cow. 434, 437, 444; *Bowman* v. *Sanborn*, 25 N. H. 87.

It is also one of the proper and essential functions of consuls, under the rules of international law, to aid in the authentication of documents of foreign origin, for use in their own country. " *Pour nous en tenir aux attributions les plus essentielles, à celles qui caractérisent véritablement le mandat consulaire, nous dirons que les consuls sont généralement chargés . . . de légaliser les actes émanant des autorités territoriales qui doivent être produits dans le pays auquel ils appartiennent.*" Calvo, *Le Droit International*, 5th ed. III, § 1423. The laws of the United States authorize the president to provide our consulates with official seals. U. S. Rev. Stat. §§ 1748, 1750. As the conduct of all foreign relations affecting citizens of the United States is in the hands of the United States, the consular officers of the United States are so far representatives of the several States that the courts in each may properly take judicial notice of their seals of office. The Superior Court was therefore warranted in recognizing the seal impressed on the certificate of our vice and deputy consul-general at London as the seal of the consulate, and in treating the seal as proving *prima facie* that it was affixed by the proper officer. This was sufficient to verify his signature. *Griswold* v. *Pitcairn*, 2 Conn. 85, 91.

The notarial certificate tended legitimately to identify the signature of Mr. Cleave, and to establish his official character. The certificate under the seal of the American consulate tended legitimately to establish the official character of the notary. Each officer was acting in a manner conformable to the usages of nations. The proof made was therefore calculated to give a reasonable assurance that the document certified was a true copy of an original contract on file in the office of the registrar of joint stock companies, and constituted *prima facie* evidence of those facts.

The attestation of the assistant registrar was simply in these words over his signature: "A true copy;" but as this came

at the end of the entire document, it was a sufficient verification. *Commonwealth* v. *Barry*, 115 Mass. 146.

It appears in the finding made for the purposes of the appeal, that the plaintiff offered to testify that in 1895 he brought a suit in a court in England in his own name against the defendant and the Mexican Land and Colonization Company, Limited, as codefendants, seeking to fix a trust or have a trust declared against the companies and have his judgment against the defendant paid by the English company; that the defendant made timely objection to the admission of this testimony, because it was immaterial, irrelevant, and not the best evidence of the facts testified to; and that the court overruled this objection, and the defendant duly excepted.

Testimony such as was thus offered was material and relevant. It supported the allegations of the complaint, and tended to show that the plaintiff had no adequate remedy by a suit in his own name for the collection of the California judgment.

A more serious question is suggested by the objection that a copy of the record of the action would be the best evidence. But the exception taken cannot avail the appellant, for it does not appear upon the record that after his objections were overruled, the testimony offered was in fact given. Rules of Court, p. 91, § 5. It is indeed found that the plaintiff brought an action, in England, but there is nothing to show that this was not otherwise duly proved.

The Superior Court appointed the plaintiff as receiver. He was not, as matter of law, disqualified by his interest as a creditor, and no facts appear which show that his selection was an improper one. High on Rec. §§ 73, 81; Kerr on Rec. Chap. IV.

He was appointed receiver of all the property, estate, moneys, papers, rights and choses in action of the defendant, " to hold the same as such receiver until otherwise ordered, for the interest of all parties interested, subject to any liens thereon," with full power " to receive the debts now due and outstanding and other assets and property and effects belonging to the International Company of Mexico, and to enforce

Barber *v.* International Co. of Mexico.

any rights belonging to said company, and for any of the pur-
poses aforesaid to bring and prosecute any actions, suits, or
claims whether in the United States of America or elsewhere,
and especially in England or in any of the courts of the Uni-
ted Kingdom of Great Britain and Ireland, and to bring and
maintain, whether in the United States of America, or else-
where, any and all suits, actions, or proceedings necessary or
proper in order to enforce against the Mexican Land & Colo-
nization Company, Limited, a corporation duly organized and
incorporated under the law of said United Kingdom, a certain
contract dated May 4th, 1889, and made by and between the
last-named corporation and the International Company of
Mexico." Four months was limited from June 22d, 1900, as
the time within which all creditors of the defendant should
present their claims to the receiver. It was further ordered
that notice be given by mail to all known creditors, and pub-
lished in a Hartford newspaper, of this limitation, and that all
creditors might appear, if they should desire, and be made
parties to the cause. All claims not so presented were "for-
ever barred."

There was no error in these provisions of the judgment.
The plaintiff sued generally in behalf of all the creditors of
the defendant, and so invited the others to share in whatever
may be recovered. In order to make any distribution of the
fruits of the receivership, it would be necessary first to ascer-
tain who might assert an interest in them, and it was proper
to require any such persons to present a statement of their
claims against the defendant at an early day. Any creditor
complaining that the notice ordered failed to reach him within
the time limited, could apply to the Superior Court for an
extension of it, at any time before the accounts of the receiver
were finally adjusted.

Equity never does anything by halves. The Superior
Court, having acquired jurisdiction of the cause for the spe-
cial purpose of making the undertaking of the English com-
pany to pay the defendant's debts enforceable for the benefit
of those to whom these debts were due, properly proceeded
to do full justice by providing for a general receivership, ex-

tending to all the assets and rights of action of the defendant, and to lay the foundation for the distribution of whatever funds might be collected among all entitled to share in them. The corporation and one of its creditors were already before it, and it was proper to take the means that were adopted to secure the participation in the proceedings of such others as might manifest a desire to profit by their fruits. *Andrew* v. *Babcock*, 63 Conn. 109, 124; *Martin* v. *Tidwell*, 36 Ga. 332, 345; 1 Pom. Eq. Juris. § 242.

Had the suit been against a single private individual, it is true that no such relief could have been granted. But an association of individuals contributing to a joint stock for the prosecution of a common business under an agreed name, stands on different ground. If it be a voluntary copartnership, and interests acquired under one or more of the partners require equitable protection, it may be accorded even to the extent of winding up the partnership affairs. High on Rec. §§ 484, 507; *Allen* v. *Center Valley Co.*, 21 Conn. 130, 139. A corporation is also an association of individuals with a common stock, a common business and a common name. It cannot be dissolved by a court of equity, unless under an enlarged statutory jurisdiction. But no statute is needed to give such a court power to wind up the affairs of an insolvent corporation, without dissolving it, where such relief is the only mode of doing complete justice between this artificial person and its creditors, in a cause otherwise fully within its jurisdiction, in which all parties in interest are present or represented. In the present action the plaintiff sues, and properly, for all the creditors, and the corporation represents all its shareholders. *Fish* v. *Smith*, 73 Conn. 377.

The claims for relief did not specifically ask for a general winding up of the defendant's affairs. There could, however, be no other reason for granting the relief that was asked, namely, the appointment of a receiver to collect all its assets. In view of this, the general claim for " any other and further relief to which in the judgment of the court the plaintiff may be entitled," was sufficient to justify the provision in the judg-

ment looking to a final distribution of whatever might be realized from this insolvent estate.

Error is also assigned because the grant of power to the receiver to enforce the contract of May 4th, 1899, does not describe its nature, nor specify the manner of such enforcement. The judgment is sufficiently plain in these respects when read with reference to the allegations in the complaint which it finds true.

There is no error.

In this opinion TORRANCE and HALL, Js., concurred; ANDREWS, C. J., and THAYER, J., dissented.