UNITED STATES *v.* V. G. NAHRGANG

**No. 7460.**—Invoice dated Potenza, Italy, June 8, 1940.
   Certified June 8, 1940.
   Entered at Detroit, Mich., July 9, 1940.
   Entry No. 178.

Second Division, Appellate Term

(Decided December 3, 1947)

*Paul P. Rao*, Assistant Attorney General (*Howard L. Harawitz*, special attorney), for the appellant.
*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Walter Auster* of counsel) for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

TILSON, Judge: This is an application for a review of the decision and judgment of the lower court filed under the provisions of section 501 of the Tariff Act of 1930. The merchandise consists of 12 piano accordions imported from Italy and entered at the port of Detroit, Mich. Eight of these accordions contained 41 treble keys, 120 bass,

four sets of reeds, and one shift. The other four accordions were identical except they contained three shifts instead of one. The one-shift accordions were entered at $47 each, plus 20 per centum, plus packing, and were appraised at $54 each, plus 20 per centum, plus packing. The three-shift accordions were entered at $55 each, plus 20 per centum, plus packing, and were appraised at $63 each, plus 20 per centum, plus packing. The merchandise was appraised on the basis of export value. The trial court found that the invoiced values represented the cost of production.

The importer contended in the court below, and contends here, that there was no foreign, export, or United States value, and that, therefore, the proper basis of value is cost of production, and that such cost of production is represented by the invoiced values. The Government contended in the court below, and contends here, that the merchandise is properly dutiable on the basis of export value, and that the appraised values represent such export values.

It appears from the record that there are two types of piano accordions recognized in the trade which deals in such instruments, to wit: "commercial" and "professional," either or both of which may or may not be also "streamline," the latter designation indicating an accordion having round instead of square corners. The accordions in question are of the "commercial" type and are also "streamline." The record also shows that the involved accordions are a very cheap quality of the "commercial" type; that the reeds are of a poor quality and machine made; that the wood of which the keys are made was unseasoned, as a result of which two keys moved when only one was pressed; that they contain only one aluminum plate on which the treble shift rods slide, whereas in the better grade of the "commercial" type two plates are used; and that the workmanship in general was of a cheap, poor quality.

At the trial counsel for appellee offered and there was admitted in evidence as exhibit 2, an affidavit of the exporter and manufacturer of the accordions in question. To the admission of this document in evidence, counsel for the Government strenuously objected on the ground that the affidavit was incomplete in that certain exhibits therein referred to were not attached as a part of the affidavit. On this point the trial court stated in its decision:

A full understanding of the affidavit may be obtained from an examination of the affidavit itself, and the legal effect of the affidavit may be determined without knowledge of the details of the unattached exhibits. * * *

In support of the above holding the trial court cited 32 C. J. S. § 774, Note 20; *Kelly* v. *Crawford*, 72 U. S. 785, 18 L. Ed. 563; and *Barber* v. *International Co.*, 73 Conn. 587, 48 Atl. 758.

These authorities appear to fully support the holding of the trial court, and we hereby affirm the same.

After an apparently careful and thorough consideration of the entire record before it, the trial court couched its conclusion in the following language:

I am satisfied from a consideration of all the evidence that the accordions in question were neither such as nor similar to any piano accordions which at the time of exportation thereof were being freely offered for sale, either for home consumption or for exportation to this country, and I accordingly find that neither foreign nor export value, * * * existed for the merchandise in issue.

I am likewise satisfied that the evidence establishes that at the time of exportation of the merchandise at bar no such or similar imported merchandise was freely offered for sale for domestic consumption in the principal market of the United States, and hence there was no United States value for the merchandise in question.

It follows, therefore, that cost of production, * * * is the proper basis for the valuation of the merchandise at bar, and I so find. The cost-of-production formula, quoted above in the margin, is divided into four items, the total of which represents the statutory cost of production. The affidavit, exhibit 2, contains statements of manufacturing costs during the period from October 1939 to June 1940, for the two different types of accordions here involved. With respect to the one-shift instruments the affidavit shows the elements involved in item (1) of the statutory formula, cost of materials, manipulation, and labor, to save been $32.25, general expenses, including light, heat, depreciation, insurance, rental, taxes, sales expenses, and miscellaneous, to have been $6.75, the cost of containers $1.50, and profit $6.50, or a total of $47 per instrument. A similar break-down of the figures given for the statutory items for the three-shift instruments shows a cost of production of $55.

This record fully supports the above-quoted findings and holdings of the trial court, and the same are hereby affirmed.

We, therefore, find as facts:

1. That the merchandise, the value of which is here in question, consists of piano accordions, eight of which have 41 treble keys, 120 bass, four sets of reeds, and one shift, and four accordions, identical in description, except that they have three shifts instead of one.

2. That this merchandise was exported from Italy on June 12, 1940, and entered at the port of Detroit, Mich.

3. That the accordions were appraised on the basis of export value, the one-shift accordions at $54 each, plus 20 per centum, plus packing, and the three-shift accordions at $63 each, plus 20 per centum, plus packing.

4. That the accordions in question were neither such as nor similar to any accordions which at the time of exportation thereof were being freely offered for sale for home consumption or for exportation to the United States.

5. That at the time of exportation of the accordions in question no such or similar previously imported merchandise was being freely offered for sale for domestic consumption in the principal markets of the United States.

6. That the cost of production of the one-shift accordions was $47 each, and the cost of production of the three-shift accordions was $55 each.

We conclude as matter of law:

That the cost of production of the involved accordions is as set out in finding of fact No. 6. The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.