[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to Connecticut General Statutes Section 46b-231(n), the State of Connecticut IV-D Agency, the Department of Social Services (DSS) (which is the subrogee of the child support rights of the Petitioner in this case due to her status as an active TANF recipient), through it's attorney the Attorney General, appeals the June 27, 2001 decision of the Family Support Magistrate (McCarthy, FSM) dismissing the Support Petition filed by the Petitioner on May 8, 2001.
 FACTS
A hearing was held on June 27, 2001 on a Support Petition filed on May 8, 2001 claiming that the child, Feyed Syed, is the recipient of TANF benefits and that the Respondent is allegedly legally responsible for the support of said child because the child is allegedly issue of the marriage of the parties. The hearing was held before the Family Support Magistrate in the Judicial District of Danbury at Danbury (McCarthy, FSM). Neither the plaintiff[1] nor the defendant were in attendance at the hearing. The assistant attorney general appeared on behalf of the plaintiff and called Donna Feneley (Feneley), a social services lead investigator for the bureau of child support enforcement and Walter Biesdecki (Biesdecki), a supervising support enforcement officer for the judicial district of Danbury. In support of the allegation that the child is issue of the marriage, the state also offered "certified" copies of the parties' marriage certificate and the birth certificate of the child. These two documents were first offered for identification only and the state called Feneley and Biesdecki in support of this offer.[2]
The grounds for the appeal as set forth in the appeal petition are as follows: "Despite the express mandate of [General Statutes] § 1-210(a), despite the guidance of Judge Bassick's Levin v. Hall decision concerning CT Page 14651 the virtually identical language in a similar companion statute, and despite the uncontroverted testimony of witnesses setting forth the longstanding child support order establishment and enforcement experience of two state agencies and their vital need to continue to utilize the statutory mandates of [General Statutes] § 1-210(a), Magistrate McCarthy refused to enter into evidence the [General Statutes] §1-210(a) certified copies and then rendered [a] final decision dismissing the Support Petition."
 DISCUSSION
"A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Raines v. Freedom of InformationCommission, 221 Conn. 482, 489, 604 A.2d 819 (1992). "The right to appeal from a family magistrate order to the Superior Court is created by §46b-231(n)." Sherman v. Sherman, 41 Conn. App. 803, 806, 678 A.2d 9
(1996). General Statutes § 46b-231(n) provides, in relevant part: "(1) A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section (2) Proceedings for such an appeal shall be instituted by filing a petition . . . not later than fourteen days after filing of the final decision . . . or, if a rehearing is requested, not later than fourteen days after filing of the notice of the decision thereon. In a IV-D support case, such petitions shall be accompanied by a certification that copies of the petition have been served upon the IV-D agency . . . and all parties of record." The court finds that the plaintiff's appeal is commenced in a timely fashion and that she also certified that the petitioner and the division of support enforcement were served copies of the appeal pursuant to General Statutes § 46b-231(n)(2).
The test for determining whether a party is aggrieved by a particular decision is twofold: (1) the party claiming to be aggrieved must have a specific, personal and legal interest in the subject matter of the decision, and (2) the party must show that this personal and legal interest has been specially and injuriously affected by the decision.Newman v. Newman, 235 Conn. 82, 103, 663 A.2d 980 (1995). The court finds that the magistrate denied the plaintiff the opportunity to raise the presumption that a child born during the marriage is issue of the marriage because the magistrate did not allow the documents offered in evidence by the plaintiff to be marked beyond the purposes of identification. Thus, the plaintiff's specific, personal and legal interest has been specially and injuriously affected. The Superior Court, therefore, has jurisdiction to consider this appeal.
General Statutes § 46b-231(n)(7) provides that "[t]he Superior CT Page 14652 Court may affirm the decision of the family support magistrate, or remand the case for further proceedings . . . or reverse or modify the decision . . . if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) [i]n violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The thrust of the appeal is that pursuant to General Statutes §1-210(a), certification by a state agency is tantamount to being a "certified" copy despite the fact that the certification was provided by DSS and not the agency that originated the document. General Statutes § 1-210 provides in pertinent part: "Any certified record [maintained or kept on file by any public agency] attested as a true copy by theclerk. chief or deputy of such agency or by such other person designatedor empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein." (Emphasis added.) The highlighted portion of the statute is conspicuously absent from the assistant attorney general's argument and memorandum of law in support of the appeal petition. The court does not find this portion of the Freedom of Information Act (FOIA) to be applicable to the present case because attestation by a public agency, in this case DSS, of records maintained by another state agency do not fall within the plain ordinary meaning of the act. Furthermore, if one takes this argument to its ultimate conclusion, any record maintained by a public agency would be admissible, thereby leaving almost any and all records subject to disclosure.
As a Connecticut evidence treatise emphasizes, General Statutes §1-210 "is unlike those pertaining to certified copies, which serve only to authenticate the document as official, in other words, that the document exists and is what it purports to be. . . . Such statutes serve only to authenticate the copy and do not contain within themselves a hearsay exception admitting the copy to prove the truth of the matter contained therein. The contents of those documents remain hearsay and are admissible only if within a traditional hearsay exception.
"The FOIA provision quoted has the seed of an extremely ill-advisedexception to the hearsay rule. The language that such certificates are `competent evidence' of the facts contained therein is unclear and susceptible to two interpretations, one rational and one irrational.
"The passage quoted above could be read to mean nothing more than that CT Page 14653 a certified copy is deemed an accurate copy of that which is on file and is admissible in lieu of the original file copy. So viewed, the provision expedites the fact-finding process and was probably what the legislature had in mind in adopting the provision.
"The alternative interpretation of the words `shall be competent evidence' is that the certified copy is proof not only that the copy is an accurate one but also that the stated facts are true, competent, and not subject to the hearsay rule. Such a construction would create a new hearsay exception of unlimited scope. `Public records' under the FOIA are not limited to public documents compiled by public officials, as is the public-records exception under the Code, but sweep in all documents on file — even those from private sources, including letters of complaint and other raw assertions and allegations of fact — whether or not the agency has verified or substantiated the facts in any way. Such statements may be hearsay or multiple hearsay, contain expressions of opinion or speculation, or even contain rumor or gossip. To generate admissible evidence, all one would have to do is send a letter to a public agency.
"It is doubtful that the legislature intended such a consequence. Without a clear indication that this hearsay construction was intended, the court should reject it as irrational and inconsistent with the judicial fact-finding process. To accept a hearsay construction is to accept the proposition that facts contained in the document on file are subject to the hearsay rule, but if that same document is certified, the very same facts become exempt from the hearsay rule. To state that proposition is to refute it.
"If the court believes itself constrained by the language of the statute to a hearsay construction, it should declare the statute unconstitutional on the ground that it violates due process. This is true, particularly in a criminal case, because the statute admits into evidence as substantive facts all matters contained in the files of a public agency without a showing of necessity or an attempt to ascertain reliability. See Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531 (1980). In both Connecticut and federal courts, the traditional catch-all hearsay exception requires a showing of both necessity and reliability. . . . This statute, however, requires neither and admits the grossest misstatements and rankest hearsay. Although such facts are admitted only for what they are worth, a jury will hear them and counsel may argue them. To permit the proof of facts, in either criminal or civil cases, with evidence that is neither cross-examined nor cross-examinable is arbitrary and capricious and denies the parties due process of law." (Emphasis added.) C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.22.6, pp. 645-47. CT Page 14654
If the court found the FOIA to be applicable in the current situation, which it does not, the magistrate correctly denied the state's request to rely on the marriage certificate and birth certificate because allowing the documents to be marked beyond the purpose of identification is arbitrary and capricious.
The state also argues that the decision of Judge Bassick in Levin v.Hall, 44 Conn. Sup. 145, 669 A.2d 652 (1995), regarding whether DNA test results were admissible, involves a "companion" statute and should have applied in the present case. The court finds the Levin v. Hall case to be distinguishable because the statute in Levin, General Statutes §46b-168, provides in pertinent part: "(a) In any proceeding in which the question of paternity is at issue the court or a family support magistrate, on motion of any party, may order genetic tests which shall mean deoxyribonucleic acid tests, to be performed by a hospital, accredited laboratory, qualified physician or other qualified person designated by the court, to determine whether or not the putative father or husband is the father of the child. The results of such tests, whetherordered under this section or required by the IV-D agency under section46b-168a, shall be admissible in evidence to either establish definite exclusion of the putative father or husband or as evidence that he is the father of the child without the need for foundation testimony or otherproof of authenticity or accuracy, unless objection is made in writing not later than twenty days prior to the hearing at which such results may be introduced in evidence." (Emphasis added.) General Statutes §46b-168(a). The court concludes that the statute discussed in the Levin
case is not a "companion" statute to the FOIA and even if it was a "companion" statute the state's reliance is misplaced, especially in light of this court's finding that the FOIA is not applicable.
"Certificates of vital statistics such as birth, death and marriage are a special category of `public records' because the `official' may be a doctor, minister, or the like, who may or may not actually be a public official. . . . A line of Connecticut cases dealing with birth and death certificates departs from the usual rule requiring personal knowledge when the official is required by statute to include information from unofficial sources." C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.22.7, p. 649.
General Statutes § 46b-34 provides:" Each person who joins any person in marriage shall certify upon the license certificate the fact, time and place of the marriage, and return it to the registrar of the town where it was issued, before or during the first week of the month following the marriage. Any person who fails to do so shall be fined not more than ten dollars" General Statutes § 46b-35 provides: "The CT Page 14655 certificates required by sections 46b-24 to 46b-27, inclusive, and 46b-29
to 46b-34, inclusive, shall be prima facie evidence of the facts stated in them."
Under the Connecticut Code of Evidence, marriage and birth certificates are admissible and deemed to be "self-authenticating" documents. Connecticut Code of Evidence § 9-1. "Common-law examples of self-authenticating writings or documents include: . . . (2) marriage certificates signed by the person officiating the ceremony. . . . Familiar statutory examples of self-authenticating writings or documents include: . . . (3) birth certificates certified in accordance with General Statutes § 7-55; (5) marriage certificates issued pursuant to General Statutes § 46b-34; see General Statutes § 46b-35. . . . It should be noted that the foregoing examples do not constitute an exhaustive list of self-authenticating writings or documents. of course, writings or documents that do not qualify under subsection (b) may be authenticated under the principles announced in subsection (a) or elsewhere in Article IX of the Code." Connecticut Code of Evidence, commentary § 9-1(b) (2000).
As previously stated, a birth certificate is to be certified in accordance with General Statutes § 7-55 which provides: "Any certification of birth, when properly certified by the registrar of the town in which the birth occurred or of the town in which the mother resided at the time of the birth or the Department of Public Health, shall be prima facie evidence of the facts therein stated in all courts and places and in all actions, proceedings or applications, judicial, administrative or otherwise, and such certification of birth shall have the same force and effect, wherever offered, with respect to the facts therein stated as an original certificate of birth." In the present case, the copy of the birth certificate offered by the petitioner was issued by the department of public health and was certified by the registrar of vital statistics. Because it meets the statutory requirements, the birth certificate is admissible. The opinion of the magistrate concerning the birth certificate is reversed.
Additionally, § 9-3 of the Connecticut Code of Evidence provides: "The requirement of authentication as a condition precedent to admitting into evidence a record, report, statement or data compilation, in any form, is satisfied by evidence that (A) the record, report, statement or data compilation authorized by law to be recorded or filed in a public office has been recorded or filed in that public office, or (B) the record, report, statement or data compilation, purporting to be a public record, report, statement or data compilation, is from the public office where items of this nature are maintained." The commentary to this section of the Connecticut Code of Evidence sheds some light on the CT Page 14656 precise meaning of the section. "The law in Connecticut with respect to the authentication of public records without a public official's certification or official seal is unclear. Cf, e.g., Whalen v. Gleason,81 Conn. 638, 644, 71 A. 908 (1909); Barber v. International Co. ofMexico, 73 Conn. 587, 602, 48 A. 758 (1901). Nevertheless, it generallyis recognized that such a record may be authenticated simply by showingthat the record purports to be a public record and comes from the custodyof the proper public office. 2 C. McCormick, Evidence (5th Ed. 1999) § 224, p. 47. . . . 7 J. Wigmore, Evidence (4th Ed. 1978) § 2159, pp. 775-76. Thus, although certified copies of most public records are "self-authenticating' in accordance with other provisions of the General Statutes; see, e.g., General Statutes § 7-55 (birth certificates); certification is not the exclusive means by which to authenticate a public record. The rule extends the common-law principle to public records or data stored electronically. Proviso (A) assumes that documents authorized by law to be recorded or filed in a public office — e.g., tax returns, wills or deeds — are public records for purposes of authentication. Cf. Kelsey v. Hanmer, 18 Conn. 310, 319 (1847) (deed). Proviso (B) covers reports, records, statements or data compilations prepared and maintained by the public official or public office, whether local, state, federal or foreign." (Emphasis added.) Connecticut Code of Evidence, commentary § 9-3. The birth certificate is also admissible under the Connecticut Code of Evidence and should have been admitted into evidence by the magistrate.
A marriage certificate is admissible if it is in compliance with General Statutes §§ 46b-34 and 46b-35. General Statutes § 46b-34
provides: "Each person who joins any person in marriage shall certify upon the license certificate the fact, time and place of the marriage, and return it to the registrar of the town where it was issued, before or during the first week of the month following the marriage. Any person who fails to do so shall be fined not more than ten dollars." General Statutes § 46b-35 provides: "The certificates required by sections46b-24 to 46b-27, inclusive, and 46b-29 to 46b-34, inclusive, shall be prima facie evidence of the facts stated in them."
Although a marriage certificate is considered "prima facie" evidence of the facts stated therein, the marriage certificate offered in evidence did not contain a raised seal. The marriage certificate itself indicates "NOT GOOD WITHOUT SEAL OF CERTIFYING OFFICIAL." (Emphasis in original.) Additionally, this court reviewed several cases in which a marriage certificate was offered in evidence and in each case either the original marriage certificate was offered or a copy of the original certificate accompanied by witness testimony was offered in evidence and accepted by the court. See Kowalczyk v. Kleszcynski, 152 Conn. 575, 577, 210 A.2d 444
(1965) (original certificate was offered in evidence along with ample CT Page 14657 testimony); State v. Schweitzer, 57 Conn. 532, 537, 18 A. 787 (1889) (marriage certificate was the original and accompanied by testimony);Northrop v. Knowles, 52 Conn. 522, 525-26, 2 A. 395 (1885) (ordinary copies require authentication).
In the present case, only a copy of the marriage certificate was offered in evidence and no testimony was offered to prove the plaintiff was married. For the foregoing reasons, the decision of the magistrate denying the offer of the marriage certificate in evidence is affirmed.
 CONCLUSION
The decision of the magistrate with regard to the birth certificate is reversed because, although it was a copy, it was certified by the registrar of vital statistics and under the Connecticut Code of Evidence should have been admitted. The decision of the magistrate with regard to the marriage certificate is affirmed because it was not an original, lacked a raised seal, and was not supported by witness testimony and thus inadmissib1e. Furthermore, since the plaintiff was not present before the court when the hearing was held, was not there to present testimony to the court, the birth certificate alone would not have been sufficient for the magistrate to enter an order of support, the decision of the magistrate to dismiss the prejudice, is affirmed.
FRANKEL, J.