MARY WHALEN *vs.* JOSEPH M. GLEESON, EXECUTOR (WHALEN'S APPEAL FROM PROBATE).

Third Judicial District, New Haven, January Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The loss or destruction of writings is a preliminary matter to be decided by the trial judge before resort can be had to secondary evidence of their contents; and if such evidence is to be excluded because, in the opinion of the trial judge, sufficient proof of the loss or destruction of the writings has not been made, that reason should be announced at the time so that, if possible, the deficiency of proof upon that point may still be supplied. If no such announcement is then made, the incorporation of a statement in the finding, made after trial, that the secondary evidence was excluded partly for that reason, is immaterial.

Evidence of the authenticity of statements made in correspondence between illiterate persons is not necessarily to be confined to the testimony of the amanuensis. The statements may relate to matters which could have been known only to the person from whom the letters purport to come, or they may be expressed in a way peculiar to him. Accordingly, proof of their contents, when the letters themselves are lost or destroyed, may be of material importance in determining their authenticity, and is therefore admissible for that purpose in connection with whatever extrinsic evidence to the same point may be offered by either party.

An original tax-list from the proper official repository, signed by a mark and containing a certificate of one of the assessors that he had in fact administered the prescribed oath to the taxpayer, now deceased, is admissible in evidence to show that the latter filed a list of his property, although the assessor, when called as a witness several years later, could not say whether it was the decedent or some one else that appeared before him.

Such a certificate is prima facie evidence of the truth of what is contained in it, on the principle that every one acting officially is presumed to have done his duty until the contrary appears.

A tax-list signed and sworn to by a stranger as "agent" is inadmissible to prove that the taxpayer filed a list, unless authority to act for the latter is shown.

There is no presumption that those assuming to act as private agents are such agents in fact, nor that what private agents may do is within their authority.

Argued January 21st—decided February 16th, 1909.

APPEAL from a decree of the Court of Probate for the District of Waterbury admitting to probate the will of Catherine Killoughey, taken to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J.* The reasons of appeal were want of testamentary capacity and undue influence. Verdict and judgment sustaining the will. *Error and new trial ordered.*

*Ulysses G. Church,* with whom was *Joseph H. Reed,* for the appellant (plaintiff).

*Edward A. Harriman,* with whom was *James M. Lynch,* for the appellee (defendant.)

BALDWIN, C. J. The paper admitted to probate as the

will of Mrs. Killoughey gave her property in part to St.
Patrick's Roman Catholic Church, and the rest to the pas-
tor of the parish for masses for the repose of her soul. It
was executed July 2d, 1906, and she died October 7th, 1907.
Her sole heir was a sister, the appellant. Both were over
seventy, at the time of her decease. Neither could read or
write. Mrs. Killoughey had a son, Thomas, who died in
1903. The appellant lived in Illinois until January, 1907,
when she went to Waterbury and took care of her sister
during her last illness, into which she had then fallen. She
produced testimony to the effect that while in Illinois Mrs.
Killoughey had from time to time sent letters to her or her
family, which had been answered, and that when she left
the State they were in a cigar box in her house in Aurora,
and had not since been seen by her. She had two daugh-
ters, one of whom, Jennie Whalen, testified that after her
mother went to Waterbury the Aurora house was sold, and
she (the witness) had burned the cigar box and its con-
tents; that she had read the letters; that one of them, ad-
dressed to her mother, came soon after the death of Thomas
Killoughey, and was signed with the name of Catherine
Killoughey; and that she (the witness) wrote and mailed
an answer to it for her mother, addressed to her aunt at
her residence in Waterbury; that a letter was received in
reply signed with her aunt's name, and that other similar
correspondence followed. She was then asked to state the
contents of the first of the letters mentioned, received by
her mother after the death of Thomas Killoughey, and
whether it stated who the writer of it was. Testimony had
already been given by a Mrs. O'Brien, who was a cousin
of Mrs. Killoughey, that the day after his death Mrs. Kil-
loughey asked her to write to the appellant to request the
latter, in her behalf, to come on and live with her (Mrs.
Killoughey); that Mrs. Killoughey told her what to write,
and, among other things, that she was old and nearing her
end, and was well provided for, and would pay the ex-

penses of her (the appellant's) journey; and that she (the witness) put all these things into the letter. It was not claimed, and there was no evidence offered tending to show, that any letters were written for Mrs. Killoughey to Mrs. Whalen, or members of her family, which contained, or purported to contain, the language or expressions used or dictated by Mrs. Killoughey, except the letter of Mrs. O'Brien, or that the letters in question were ever read to her or assented to by her. Counsel for appellee objected to the evidence offered as to their contents, on the ground that it was not sufficiently shown that they contained any expressions or declarations actually made by Mrs. Killoughey; and did not sufficiently appear to have been written from her dictation or by her direction. The court ruled and informed counsel for the appellant that he might introduce any letter which he would identify by reason of the testimony of the writer, be it Mrs. O'Brien or any other person, as written in behalf of Mrs. Killoughey to Mrs. Whalen, and also any letter written to Mrs. Whalen in Aurora which was specifically in reply to a letter which she had caused to be written to Mrs. Killoughey, so that the one might be identified by the other; and that he would be required to identify any letter, the contents of which he sought to introduce, by evidence of some person who wrote it.

The questions put to Miss Whalen as to the contents of the letter written after the death of Thomas, were thereupon excluded, as were similar questions relating to the contents of the subsequent correspondence as to which she had testified.

The finding states that at the time of these rulings "the court was not fully satisfied of the destruction of all the letters in question, and no sufficient evidence of the identity of any of the contents of the letters claimed to have been burned, as being declarations made or assented to by Mrs. Killoughey." A motion to correct the finding, under

General Statutes, §§ 795, 796, by striking out these state-
ments, was filed, and exceptions based thereon are among
the reasons of appeal. In support of these exceptions a
transcript of the stenographer's notes of Miss Whalen's
testimony has been made part of the record.

It appears from this transcript that the first of the
grounds so stated for excluding the questions was not
mentioned by the court at the time when the rulings were
made. Had it been, it may be that the appellant would
have been able to supply further evidence of the destruc-
tion of the letters. That sufficient proof that they had
been destroyed had been made was not denied by the coun-
sel for the appellee, in making their objections to the ad-
mission of the questions. It was a preliminary matter to
be decided by the trial judge, before any resort could be
had to secondary evidence. If the questions were to be
excluded because in his opinion no case had yet been made
out for the admission of such evidence, that opinion should
have been announced at the time, as the reason for the rul-
ings; and, not having been so announced, the finding in
this respect is immaterial.

The second of the two grounds stated in the paragraph
in question of the finding is somewhat obscurely expressed,
but we understand it to mean that no sufficient evidence
had been presented that any of the contents of the letters
were declarations made or assented to by Mrs. Killoughey.
As to the letter written by Mrs. O'Brien there clearly had
been sufficient evidence, and as to the other letters, we are
of opinion that the proofs offered as to the point in ques-
tion were such as entitled the appellant to have that de-
termined by the jury, in connection with the evidence of-
fered as to what the letters in fact contained.

An illiterate person can only communicate by letter
through the aid of an amanuensis. The signature must be
that of the latter. Testimony from him that he wrote only
what he was told to write is not the only means of deter-

mining that fact. The statements made may relate to what could not have been known to any one but the person from whom the letter purports to come; or they may be expressed in a particular way that is peculiar to him. They may be put in such a form as an uneducated person would naturally use, and they may be phrased in a style which conclusively shows that the words are those of the amanuensis. If, therefore, the letter be lost or destroyed, proof of its contents may be of material importance in determining from whom the communication really came. 3 Wigm. on Ev. §§ 2148, 2153.

The latter part of the paragraph in question was in effect a mere restatement of the reasons for the rulings which were given at the time. The appellant was therefore not prejudiced by the denial of motions to strike out the statements specified.

There was, however, error in excluding, for such reasons, the secondary evidence of what the letters contained; assuming that there had been sufficient proof of their loss. It was for the jury to say who wrote and who received them, after hearing their contents, and considering the intrinsic evidence that might be thus furnished as to their origin, in connection with whatever extrinsic evidence relevant to the same point might be produced by either party. *Fitch* v. *Bogue,* 19 Conn. 285, 290; *Deep River National Bank's Appeal,* 73 id. 341, 347, 47 Atl. 675.

The appellant offered evidence that the death of her son was a great shock to Mrs. Killoughey, and that she was never afterward of sound mind, seldom left her house, and took but little interest in the care of her property. To meet this the appellee, among other things, put on the witness-stand two assessors of the town of Waterbury, who produced the original tax-lists filed in their office, as the lists of Mrs. Killoughey for the years 1903, 1904, 1905 and 1906. One of them testified that the list of 1903 was signed by her by her mark and sworn to by her before him. This

list was admitted without objection. The other assessor testified that the lists of 1904 and 1905 were signed by a mark and sworn to before him by some one purporting to be Mrs. Killoughey, at the time when they were filed; that he did not know Mrs. Killoughey personally; and that he could not say that she ever appeared before him. These two lists were properly received. They came from the proper official repository, and each bore a certificate by an official having authority to administer oaths to taxpayers that he had in fact administered such an oath to Mrs. Killoughey. Such a certificate is prima facie evidence of the truth of what is contained in it, on the principle that every man acting officially shall be presumed to have done his duty, until the contrary appears. *State* v. *Byrne,* 45 Conn. 273, 280; *State* v. *Main,* 69 id. 123, 140, 61 Amer. St. Rep. 30, 37 Atl. 80. The duty of bringing in a tax-list and of verifying it by oath is cast upon each taxpayer as a personal obligation. General Statutes, §§ 2296, 2302, 2303, 2305. It was required of Mrs. Killoughey, and the evidence in question went to show that she performed it.

The list of 1906 did not purport to be signed or sworn to by her. The signature read "Bridget Donege, Agent," and the only affidavit was that of "Bridget Donege." Bridget Donege could not be found, and no proof was offered that she had any authority from Mrs. Killoughey to act for her. Under these circumstances there was error in admitting this list. There is no presumption that those assuming to act as private agents are such agents in fact, and none that what those who are private agents may do is within their authority. *Ward* v. *Metropolitan L. I. Co.,* 66 Conn. 227, 239, 50 Amer. St. Rep. 80, 33 Atl. 902. So far as appears, Bridget Donege was a mere intermeddler, who was never employed by Mrs. Killoughey to represent her.

There is error and a new trial is ordered.

In this opinion the other judges concurred.