## WABASH R. CO. v. LEWIS et ux.

No. 8870.

Circuit Court of Appeals, Eighth Circuit.

March 11, 1931.

Paul M. Peterson, of Columbia, Mo. (Homer Hall, of St. Louis, Mo., and Boyle G. Clark and Nick T. Cave, both of Columbia, Mo., on the brief), for appellant.

Don C. Carter, of Sturgeon, Mo., for appellees.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This is an appeal from a judgment rendered by the United States District Court for the Central Division of the Western District of Missouri, in an action brought by the appellees, as plaintiffs below, against appellant, defendant below, for the recovery of $7,500 in damages alleged to have resulted to the residence property of the plaintiffs, situated at Columbia, Mo., by reason of the failure on

the part of the defendant railroad company to construct and maintain necessary and proper ditches and openings along and through a certain embankment constructed and used by said railroad company for and as a roadbed for certain of its spur tracks.

The petition of the plaintiffs alleges, among other things, ownership in the plaintiffs of the property alleged to have been damaged; construction of the embankment or roadbed by the defendant; its failure and neglect to construct, maintain, and keep open suitable and necessary ditches and drains along said roadbed, and sufficient and necessary openings through and across said roadbed or embankment; and that by reason of said failure and neglect, on the 19th and 28th days of June in the year 1928, and on the 30th day of April and the 1st day of May, in the year 1929, waters, including surface waters, were gathered on the north and west side of said embankment, and were held and forced back, across, on, and over the property of the plaintiffs by reason of which the plaintiffs were damaged in the sum of $7,500.

The defendant, by way of answer, interposed a general denial.

The case was tried to a jury, and at the conclusion of all of the evidence the defendant moved the court for a directed verdict in its favor, which motion was denied. The jury found for the plaintiffs and assessed their damages at the sum of $1,658.37. Judgment was thereafter entered accordingly, from which judgment the defendant railroad company has appealed to this court.

There is substantial evidence which tends to prove the following facts: William Lewis and Fanny Lewis are husband and wife, and for some ten or twelve years prior to the commencement of the action they owned and resided upon the property described in the petition, which consists of a certain lot or parcel of ground with a two-story and basement frame dwelling house situated thereon, in the city of Columbia, Mo. Said residence property fronts west on a street known as Christian College avenue, which runs north and south in the city of Columbia. The main line tracks of the appellant railroad company run in a northerly and southerly direction, some distance east of the Lewis property; and a street, known as Rogers street, runs in an easterly and westerly direction at some distance north of the Lewis property. The natural slope of the area between Christian College avenue and the main line railroad tracks and south of Rogers street is generally to the south. Some two or three years pri-

or to the commencement of the action the appellant constructed a grade or embankment from a point on the west side of its main line tracks, at or near their intersection of Rogers street, and extending upon a curve east and south of the Lewis property in a southerly and southwesterly direction to a point on the east line of Christian College avenue, some distance south of the west line of the Lewis property. This grade or embankment was constructed and used as a roadbed for certain spur tracks or team tracks which branch off from the main line tracks, and in order to overcome the natural slope of the ground and maintain the grade of the spur tracks at the approximate level of the main line tracks, the height of the embankment increased from a height of about two feet at the point of its junction with the main line roadbed, to a height of some ten or twelve feet at its west end, directly south of the west line of the Lewis property. An inclined driveway was also constructed by means of an earth fill or grade some thirty or forty feet in width, which started at the approximate grade of the Lewis property and at a point near its south line, and extended south along the east line of Christian College avenue, increasing in height until it reached the level of, and connected at a right angle with, the roadbed or embankment at its west end.

Prior to the construction of this embankment, surface waters falling or flowing upon the area lying between Christian College avenue and the main line railroad tracks and south of Rogers street, flowed freely and naturally to the south and found their way into a well defined natural water course known as Flat Branch, which was a stream some eight or ten feet in width, and six or seven feet in depth. No part of the area above referred to had ever been flooded or inundated as a result of inadequate drainage prior to the construction of said embankment within the memory of the witnesses. With the evident purpose of affording an outlet to the south into Flat Branch, for surface waters finding their way onto the area above described, a drain tile, eighteen or twenty inches in diameter, was laid across the bottom of the embankment when the same was constructed at a point approximately south of the Lewis residence.

On the 19th and 28th days of June, 1928, and on the 30th day of April and the 1st day of May, 1929, the natural flow of surface waters falling or flowing onto the area lying north and west of the embankment above referred to was obstructed by said embank-

ment, as a result of which said waters were impounded upon and overflowed a large part of said area, including the property of the appellees, which was inundated to a depth of from eight inches to a foot. When the water subsided, a large accumulation of mud, filth, and débris was left in the basement of the dwelling house and upon the lawn. As a result of these overflows, the foundation walls of said dwelling house settled and cracked; the basement floor was cracked and broken; windows and doors sagged and bound; the fireplace settled and was torn away from the wall and casing; and the dwelling house was damaged in other respects. Immediately after the 19th of June, 1928, the tile opening through said embankment was found to be filled with mud and débris.

Appellant contends that the court erred in denying its motion for directed verdict for the reason that there was no evidence that the overflow was caused by the failure to construct lateral ditches along or suitable openings through its roadbed, as required by section 9953, of the 1919 Revised Statutes of Missouri. This action was evidently brought under the section of the Missouri Statutes above referred to, which reads as follows:

"Sec. 9953. Ditches and drains—right of way to be kept clean.—It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state, and of any corporation, company or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad."

■ While there may be nothing in the record which tends to prove that the overflows resulted from any structural or mechanical defects in the ditches along, or the opening through, the roadbed, there is evidence from which the conclusion might reasonably be drawn that the opening through the embankment was insufficient in size to afford proper drainage of the area affected. There is also ample evidence to support a finding that the opening through the roadbed, regardless of its size, was not properly maintained. The statute under which the action was brought is regulatory in its nature, and it imposes upon the railroad company not only the duty of constructing suitable ditches along, and openings through, its roadbed, but also a continuing duty to maintain the ditches and openings after the same have been constructed. Manifestly, this statute, by its terms, makes it incumbent upon the appellant to keep the ditches along, and the openings through, its roadbed in repair and good working order so as to permit the free and unobstructed flow of surface waters through them, and thus afford proper and adequate drainage of the area lying north and west of the roadbed.

■■ Appellant also contends that the evidence shows that the alleged damage to appellees' property resulted from floods or overflows caused by excessive and unprecedented rainfall, and our attention is directed to the fact that appellant requested the court to instruct the jury that they could not allow appellees anything for damages caused by a rain or overflow on the 28th day of June, 1928, and that a similar instruction was requested as to the rain or overflow occurring on the 1st day of May, 1929, and the court's refusal to give these requested instructions is now assigned as error. It is argued that the only evidence having reference to the 28th day of June, 1928, and the 1st day of May, 1929, is the record of the Weather Bureau, which shows that the rain occurring on the 28th day of June, 1928, was unusual and unprecedented, and that appellant would not be liable for damages resulting from conditions which could not have been reasonably foreseen. It is also argued that there was no evidence that appellees sustained any damage as a result of rain or overflow occurring upon either of said last-mentioned dates. It is true that there is evidence in the record which tends to prove that the quantity of rain precipitated on both June 19 and June 28, 1928, was extraordinarily excessive and unprecedented in that locality, but it is equally true, notwithstanding the confused condition of the testimony, that there is substantial evidence in the record to the effect that while a heavy rain fell on each of these dates, neither of the rainstorms was extraordinarily excessive or unprecedented. Each of several witnesses testified to their knowledge of previous rainstorms visited upon the vicinity which were of equal or greater volume and severity. The appellees' witnesses, in the first instance, all testified as to rains and flood

damage occurring on the 26th day of June, 1928, and the 29th day of April, 1929. After the records from the office of the Weather Bureau were received in evidence, it appeared that there was no rain on either of the last-mentioned dates, but it also appeared that heavy rain fell on the 28th day of June, 1928, and that nearly an inch of rain fell on May 1, 1929. These witnesses were then recalled, and when their attention was called to the apparent discrepancy between their testimony and the records of the United States Weather Bureau, each of them testified that they might have been mistaken as to these dates. It is true that the witnesses, when recalled, did not specifically say that they had, in fact, been mistaken as to the dates and change their testimony in this regard, as perhaps they should have done; but in view of all of the facts and circumstances it was undoubtedly manifest to the court, the jury, and all concerned that the witnesses, when originally testifying, had, in fact, been mistaken as to these particular dates. There is nothing in the record, however, to indicate that their testimony was otherwise erroneous. The events detailed in their testimony occurred; the conditions related by them obtained; and as a result, appellees' property was damaged. The important question in the case was whether or not this damage was the result of the negligent act or omission on the part of the appellant, and the exact dates were of minor importance and material only to the end that appellant might be sufficiently advised as to the time of the alleged damage to enable it to intelligently answer the petition and prepare its defense. The credibility of witnesses, the interpretation of testimony, and the weight which shall be given to it, are matters to be considered and determined by the jury, and in view of the facts and circumstances disclosed by the record in this case, we feel that it was clearly proper to submit all of these questions to the jury, leaving it for them to say whether or not, under all of the facts, the evidence and circumstances in the case, the appellant was liable. We find no error in the action of the trial court in these regards.

■ Appellees' petition as originally drawn alleged the specific dates of the several inundations which resulted in the damage complained of to be the 19th and 26th days of June, 1928, and the 29th and 30th days of April, 1929. Witnesses for appellees, in their direct testimony, fixed these dates as the dates when the water overflowed appellees' property. After the records of the Unit-

ed States Weather Bureau office were offered and received in evidence, appellees' witnesses were recalled, and each testified that he or she might have been mistaken as to the exact dates. Counsel for appellees, over appellant's objection, was then permitted to amend the petition by changing the dates of the alleged inundations from the 19th and 26th days of June, 1928, to the 19th and 28th days of June, 1928, and from the 29th and 30th days of April, 1929, to the 30th day of April and the 1st day of May, 1929. It is urged by appellant that the trial court erred in permitting this amendment. In support of this contention appellant argues that there was no evidence which could justify the amendment because the appellees' witnesses did not fix the dates in the amended complaint as the dates of the particular inundations, but when they were recalled they merely stated that they might have been mistaken. While, as suggested above, the record in this regard is far from satisfactory, it is manifest that no prejudice resulted because of the amendment. There is no evidence that the appellant was taken by surprise, or in any way misled. The application to amend went to the wise discretion of the trial court, and in the absence of a showing of abuse of discretion, the court's action will not be disturbed upon review. There was no error in permitting the amendment.

■ Upon the trial of the case the appellees called two contractors who were sworn and testified as expert witnesses. Appellant objected to certain hypothetical questions propounded to these witnesses, and the court's action in overruling these objections is now assigned as error. It appears by the record that the particular objections relied upon as a basis for the claim of error were very general in their terms. In fairness to the trial court and all parties concerned objections to hypothetical questions should specifically state the particular matters included in or omitted from the question which renders it objectionable, and had the objections in question been sufficiently definite in this regard, the defects in the questions might have been easily remedied at the time. But aside from this, the record discloses that the witnesses to whom these questions were propounded were cross-examined at length by counsel for appellant, and the identical matters, the omission of which from the questions appellant now contends rendered them objectionable, were supplied by such cross-examination. It follows that if there was error in overruling these objections, it was cured by the cross-

examination and was in no way prejudicial to appellant. Travelers' Ins. Co. v. Schenkel (C. C. A.) 35 F.(2d) 611.

In the course of the court's charge to the jury the following language was used:

"The Court is going to say to you in discussing the evidence in this case, that the defendant contends that if the property was flooded at the times mentioned in the petition that it was due to an excessive, unprecedented rainfall. Gentlemen, I may say to you that nobody is responsible for an unprecedented or excessive rainfall unless it should appear that the negligence of the railroad company concurred, that is concurred,—I mean happened at the same time, the excessive rainfall and the negligence of the defendant in the case all combined at the same time to cause the plaintiff injury, then plaintiff is entitled to recover."

 Appellant excepted to this portion of the court's instructions and now assigns it as error, and in support of its claim contends that there was no evidence of concurrent negligence in the record. Clearly, appellant is in error in this contention. It has already been observed that there was evidence from which the jury might have found the defendant negligent in its failure to construct adequate openings through its grade, as well as in maintaining such opening after its construction. In view of the verdict it is manifest that the jury found such negligence. If the jury, under the evidence, believed that the rainfall was excessive, and, as defined by the court in its instructions, constituted an act of God, and that, notwithstanding this fact, plaintiff's property would not have been damaged but for the fact that the flow of the flood waters was retarded by reason of appellant's negligence, then, manifestly, the negligence concurred in causing the damage. The rule is well settled that where rains are so unprecedented and the resulting floods so extraordinary that they are, in legal contemplation, an act of God, one obstructing the water flow will not be held liable, provided, however, that the so-called act of God is not only the proximate, but the sole cause of the damage. In other words, where an unprecedented flood is the cause of the damage, but the prior, coincident, or subsequent negligence of one obstructing the flow of flood waters so mingles with it as to be an efficient and co-operating cause, the obstructor will be held responsible because of his concurrent negligence. The instruction complained of was a proper statement of the law and was fully warranted by the testimony in the case. Tranbarger v. Railroad, 250 Mo. 46, 156 S. W. 694; Chicago, etc., Ry. Co. v. McKone, 36 Okl. 41, 127 P. 488, 42 L. R. A. (N. S.) 709; Williams v. Columbus Producing Co., 80 W. Va. 683, 93 S. E. 809, L. R. A. 1918B, 179.

It follows that the judgment appealed from should be, and is, affirmed.