## METROPOLITAN LIFE INS. CO. v. ARMSTRONG.
### No. 10601.

Circuit Court of Appeals, Eighth Circuit.
Aug. 13, 1936.

Emmet S. Brumbaugh, of Omaha, Neb. (Harley G. Moorhead, of Omaha, Neb., on the brief), for appellant.

Sidney W. Smith, of Omaha, Neb., for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

GARDNER, Circuit Judge.

This was an action by appellee against appellant to recover on the double indemnity provisions of two life insurance policies in which appellant was the insurer, Charles D. Armstrong the insured, and appellee the beneficiary. The parties will be referred to as they appeared below.

The double indemnity provisions obligated defendant to pay double the amount of insurance if it received due proof of the death of the insured as the result of bodily injury, effected solely through external, violent, and accidental means, without in sixty days after the injury, independently and exclusively of all other causes. Double indemnity was not payable if the death of the insured resulted directly or indirectly from certain designated causes, among them being self-destruction, whether sane or insane. The defendant's plea was suicide. Plaintiff contended that the evidence showed accidental death by monoxide poisoning, while defendant contended that the evidence showed intentional suicide by monoxide poisoning. The sufficiency of the evidence to sustain the verdict was not challenged below by motion for a directed verdict, and hence cannot be raised here, but we must assume that this issue, under the evidence, was a proper one for the jury.

Succinctly stated, the verdict establishes the following material facts: Insured, Charles D. Armstrong, lived in Omaha, Neb. He was a strong, energetic man, fifty-six years old, engaged in the real estate business. About 2 o'clock in the afternoon of February 18, 1933, he went to a lawyer's office in Omaha, to attend a conference relative to some litigation in which he was interested. About 4:15 p. m., he left the conference, got his automobile, and went to a residence property at 5011 Western avenue in connection with his business, and was seen to drive into the garage at that place at 20 or 25 minutes before 5 o'clock. The tire chains were then on his car. At about 5 p. m. he was found dead or dying in the garage, lying near the left wheel of the car. The doors of the garage were closed, the engine was running, the garage was full of smoke, and the left rear wheel was jacked up. A chain was lying loose on the wheel as though just unfastened; the jack was in place near the axle; the handle of the jack and a pair of pliers were lying near Armstrong. All the other wheels of the car were resting on the garage floor. The chain of the right wheel was lying in a heap beside it. When found, Armstrong had a bruise on his forehead, which had not been seen before. Death was caused by monoxide poisoning. The jury found by their verdict that the death was accidental and not suicidal.

Defendant seeks reversal on the ground that the court committed error: (1) In various rulings on the admissibility of evidence; (2) in one of its instructions; and (3) in allowing an excessive rate of interest on the sum due.

1. We shall first consider the challenged rulings of the court on the admissibility of evidence.

■ (1) Mr. Daniels, who had been well acquainted with the insured for a period of twenty-five or thirty years, called as a witness on behalf of plaintiff, was asked: "What was Mr. Armstrong's character?" This was objected to as incompetent, irrelevant, and immaterial, and not an issue in the case. The objection was overruled, but no exception was taken to the ruling. In the absence of such exception, the alleged error will not be reviewed. Lahman v. Burnes Nat. Bank (C.C.A. 8) 20 F. (2d) 897; College Inn Food Products Co. v. Loudon Packing Co. (C.C.A. 7) 65 F. (2d) 883; Jordy v. Dowling Co. (C.C.A. 5) 30 F.(2d) 937; Newport News & M. V. Co. v. Pace, 158 U.S. 36, 15 S.Ct. 743, 39 L.Ed. 887.

■ (2) Dr. Bliss, called as a witness for plaintiff, in rebuttal, after defendant had shown that the insured had diabetes, was asked: "Q. What is the fact, Doctor, as to whether a person having diabetes and keeping it under control by following his doctor's advice, as to his diet, as to whether such a person would live out his life's expectancy?"

This was objected to as calling for a conclusion of the witness and not including other factors in this case shown to be present. The objection was overruled, and the doctor answered as follows: "A. Of course, diabetes is a serious disease and improper care means a shortening of the life very materially. Under proper management, if that individual continues to learn how to live with his handicap, it is my opinion that that man can live out his days, as well as if he did not have the diabetes."

Defendant urges that there was no evidence that the insured kept his diabetes under control. This ground of objection, however, was not embodied in the objection as made, nor called to the attention of the lower court or opposing counsel. It cannot, therefore, be considered on appeal. United States v. Nickle (C.C.A.8) 70 F. (2d) 873; Cockrell v. United States (C.C.A. 8) 74 F.(2d) 151; Niagara Fire Ins. Co. v. Raleigh Hardware Co. (C.C.A. 4) 62 F.(2d) 705; Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735.

It is, of course, error to embrace in a hypothetical question a fact not shown by the evidence, and an error in permitting a hypothetical question to be answered may be so serious as to require reversal to prevent a miscarriage of justice, even though the error has not been properly preserved and presented. United States v. Harris (C.C.A. 9) 79 F.(2d) 341; United States v. Noble (C.C.A. 9) 79 F.(2d) 342; United States v. White (C.C.A. 9) 77 F. (2d) 757. In the instant case, however, we think there was evidence which tended reasonably to establish this assumed fact. Dr. Bliss testified: "My first examination of Armstrong in 1924 was a general checkup, a thorough examination * * * on my examination of him in 1926 he had no sugar in his urine, at intervening times he had been in and checked with me about his diet; he had sugar and sometimes not; I have no record of sugar being present on my examination of him in 1927; at the examination of November 26th, 1930 the test shows no sugar, the examination of March 25, 1931, showed no sugar, the test of January 11, 1933 showed a trace of sugar only."

This proof may not be entirely satisfactory, but that is not the test. It is sufficient if the assumed fact is developed directly, fairly, and reasonably by the evidence. Virginia Beach Bus Line v. Campbell (C.C.A.4) 73 F.(2d) 97; Woodward v. Chicago, M. & St. P. Ry. Co. (C.C.A. 8) 122 F. 66; Denver & R. G. R. Co. v. Roller (C.C.A. 9) 100 F. 738, 49 L.R.A. 77. The evidence, we think, fairly justified the assumption that the diabetes was being kept in check.

■ The other ground of objection is that certain other essential facts were omitted from the hypothetical question. The objection, however, does not point out what facts it is claimed were omitted, and hence that ground of objection was also properly overruled. Wabash Ry. Co. v. Lewis (C.C.A. 8) 48 F.(2d) 519; United States v. Nickle (C.C.A. 8) 70 F.(2d) 873. It is for the witness and not the court to determine whether from the facts stated he is able to express a scientific opinion. The weight of the opinion was for the jury. A hypothetical question need not include all the facts in evidence, nor facts or theories advanced by opposing counsel. Its form and length must be left largely to the discretion of the trial court. New York Life Ins. Co. v. Doerksen (C.C.A. 10) 75 F.(2d) 96. There was no error in overruling this objection.

(3) Dr. Bliss was asked the following hypothetical question: "Q. Assuming that a man of 56 years and 8 months of age should stoop forward in a position such as he would take in stooping down to jack up a wheel of an automobile, what would be the effect upon the circulation of that man while stooping?" This was objected to for the reason "that according to this witness' own testimony there are several different ways in which that might be done, no foundation laid, and incompetent, irrelevant and immaterial." This objection was overruled, and the witness answered: "A. The act of stooping would produce·a congestion of the brain."

 Defendant urges that it is a matter of common knowledge that the insured might have crouched, instead of stooping to elevate the car with the jack. This, however, is not suggested by the objection interposed. If this specific objection had been interposed, it might have been answered below. But it is also contended that there is no evidence that the insured stooped. A photograph of the car with the jack in place as Armstrong must have used it was introduced in evidence. We think it was a fair presumption based upon the physical facts and circumstantial evidence that he would stoop in using the jack. The jury were the judges of whether the facts were correctly hypothesized. There was evidence that insured jacked up the car. He was seen to drive into the garage about 20 or 25 minutes before 5 p. m. At 5 he was found dead or dying. The chain had been removed from the right rear wheel, while the chain on the left rear wheel was unfastened, and the left rear wheel was jacked up. The car had chains on when driven into the garage. The contention that the evidence does not show tht Armstrong jacked the car up is without force, and there was no error in overruling defendant's objection to this hypothetical question.

 (4) Dr. Bliss was also asked: "Q. Doctor, assuming that such a man had been so stooping over the exhaust pipe of an automobile in which the automobile motor was running and generating carbon monoxide gas, would he be apt to inhale some of that carbon monoxide gas?"

This was objected to on the ground that it was "incompetent, irrelevant and immaterial, invading the province of the jury and not based on any evidence in the case." The objection being overruled, the witness answered: "A. I think so."

It is contended that there is no evidence that the motor was running when the car was jacked up, but we think the physical facts and circumstantial evidence were sufficient to show that he jacked up the car with the motor running, rather than that he jacked up the car and then started the motor.

 It is urged that whether Armstrong would have inhaled carbon monoxide was not a matter of expert testimony but a matter within the knowledge of every layman. Granting this to be true, the answer could certainly not be prejudicial. It seems clear that if Armstrong were over the exhaust pipe of the running motor, any one would know that he must have breathed and inhaled the escaping gases. No expert was required to tell the jury a fact so self-evident. But a correct answer by an expert on a question within the knowledge of all, and which can have but one correct answer, cannot be prejudicial. Puget Sound Electric Ry. v. Van Pelt (C.C.A. 9) 168 F. 206; Ocean Accident & Guarantee Corp., Ltd., v. Schachner (C.C.A. 7) 70 F.(2d) 28; Knauf v. Dover Lbr. Co., 20 Idaho, 773, 120 P. 157; Fisher v. Oregon Short Line & U. N. R. Co., 22 Or. 533, 30 P. 425, 16 L. R.A. 519.

 (5) Dr. Bliss was also asked the following question: "Q. If a man had been close enough to inhale some carbon monoxide gas would that increase the tendency to dizziness and fainting which he would have had in rising from the stooping position as you have already testified?"

This was objected to as incompetent, irrelevant, and immaterial, basing one presumption or supposition on another, and no foundation laid. The objection was overruled, and the witness answered: "A. It would."

The witness had already testified without objection that rising from a stooping position caused congestion to change into anemia, causing a tendency to dizziness. But it is urged that there is no evidence that Armstrong rose from a stooping position. He must have jacked up the left rear wheel of the car. To do so he must have lowered himself or stooped. Then he must have raised himself to go to the tire and unfasten the chain. The contention is without substance in view of

the physical facts and surrounding circumstances.

▮▮▮▮ (6) Dr. Young, a specialist in nervous and mental conditions, called as a witness, in rebuttal was interrogated as follows: "Q. Doctor, assuming that at a fixed time and minute, a given hour and minute, a man was mentally normal and with no intent or thought of suicide and was then attending to some involved and important business interests, and perfectly intelligent and efficient at that time, and assuming further that no event of importance had intervened and no critical matter intervened, would such a man, within three quarters of an hour thereafter, come to an intent to commit suicide and to commit suicide, in your opinion?"

This was objected to "as incompetent, irrelevant, and immaterial, and including in the question matters of mental attitude of the person concerning whom the inquiry is made, of which there is no evidence, and further including facts that are not in evidence in regard to what transpired between the time of the business conference and the time of the death of the person involved, and invading the province of the jury." The objection being overruled, the witness answered: "A. In my opinion, he would not be of the intent or thought of suicide or to commit suicide."

The question was doubtless objectionable upon a number of grounds. But the question before us is whether or not the objection interposed should have been sustained, and whether the answer was prejudicial. What a mentally normal man would do under assumed conditions is not a proper subject for expert testimony. Expert testimony as to mental processes is only required where the subject of the inquiry is abnormal or subnormal, or where the acts of an abnormal or subnormal person are in question. The ordinary individual knows as much about what the normal man will do under given conditions as does the medical expert. We are, however, not convinced that the answer was prejudicial. The interrogatory begs the question because it assumes indirectly the very point raised. The answer tended to prove nothing. In effect it affirmed that a mentally normal person with no intent or thought of suicide would not, while in that condition, have an intent to commit suicide. The error was therefore not prejudicial.

▮▮ This witness was also asked: "Q. Would you consider such a man of a nature as one apt to commit suicide?"

This was objected to as invading the province of the jury, incompetent, irrelevant, and immaterial. The objection being overruled, the witness answered: "A. I had never thought of Mr. Armstrong committing suicide."

There was no motion to strike the answer. Not only was it not responsive, but it was not material, and doubtless would have been stricken had motion been made. As we have already observed, the subject was not a proper subject of expert testimony. If, as this witness had been asked to assume, the insured was mentally normal and perfectly intelligent, the jury could not be assisted by the opinion of an expert as to whether or not he might commit suicide; but no such objection was interposed, and the answer was certainly not prejudicial.

(7) Dr. Eggers, called by plaintiff, on rebuttal was asked: "Q. Assuming that the post-mortem examination of a man about 56 years and 8 months old, a few days after death, and after embalming of the body, there is found a condition over the left eyebrow, and a portion of the skull removed and the scalp moved back, and there is a finding within the skull that the condition is more marked and finding an area about two inches by one inch showing the condition through the skull and the periosteum, in your opinion, what would be the cause of such a condition?"

This was objected to as incompetent, irrelevant, and immaterial, and invading the province of the jury. The witness answered: "A. Coming in contact with some force."

The witness was also asked: "Q. Assuming that the man, in so stooping for the purpose of jacking up the car and while stooping had his head down directly over the exhaust from the motor of a running automobile and had thereby inhaled fumes of carbon monoxide gas, would such condition tend to make a man dizzy and fall?

This was objected to as incompetent, irrelevant, and immaterial, assuming facts not in evidence, and based on supposition and invading the province of the jury. The witness answered: "A. The effect of carbon monoxide together with the change in posture would certainly tend to ag-

gravate his condition of dizziness, and he would be more apt to be made dizzy."

As to the first of these questions, it is argued that a jury, as well as an expert, could conclude that since there was other evidence that the condition referred to in the question was a bruise resulting in a deep discoloration of tissues, force was its cause. But wide range in the field of medical testimony is allowed in the reception of the opinion of experts. In any event, there was no ruling on the objection, and hence no exception was saved. In the absence of either a ruling or an exception, the alleged error can, of course, not be reviewed. Federal Intermediate Credit Bank v. L'Herisson (C.C.A. 8) 33 F. (2d) 841; McCutchan v. United States (C. C.A. 8) 70 F.(2d) 658.

(8) The court permitted the widow of the insured to testify that deceased, speaking of a friend who had committed suicide, had said, "Only a crazy man would commit suicide, that it was against the law of God and man." The question was objected to as "incompetent, irrelevant, and immaterial, and too remote from the time of the death of the deceased." The time is fixed as "a time when a friend of ours killed himself just a little while before he started out to California."

Mrs. Armstrong testified that she went to California in August, 1930, and was not again in Omaha until February 18, 1933, the date of her husband's death. The statement of Armstrong could not therefore have been made less than two years and six months before his death. The objection might well have been sustained. The specific objection is as to the remoteness in time of this declaration. Generally speaking, "rulings of the trial judge upon questions of remoteness will not be disturbed by an appellate court in any case, unless an abuse of discretion quite clearly appears." Hews v. Equitable Life Assurance Society (C.C.A. 3) 143 F. 850, 852. See, also, Nicola Bros. Co. v. Speer Box & Lbr. Co. (C.C.A. 3) 133 F. 914; Overstreet v. Norfolk & W. Ry. Co. (C.C.A. 4) 238 F. 565.

In Nicola Bros. Co. v. Speer Box & Lbr. Co., supra, it is said: "It would be difficult to supply any precise test for determining, in all cases, whether any fact proposed to be proved is or is not too remote to be material, and we believe that no attempt to do so has ever been made. The circumstances of each case are necessarily controlling, and the action of the trial judge will not be disturbed by an appellate court, unless an abuse of discretion quite clearly appears."

In determining the weight to be given to the evidence, the jury should take into consideration its remoteness in point of time from the subject under consideration, and, in the absence of instructions, we may assume that the court so instructed the jury. The admission or exclusion of testimony on the ground of remoteness must of necessity be left largely to the discretion of the trial judge, and the appellate court will not reverse the trial judge on his rulings, although it may think, contrary to his rulings, that the evidence should or should not have been admitted. Defendant had an opportunity to show any change in conditions that may have intervened to overcome the aversion to self-destruction, or to show any change in the insured's mental attitude on that subject. The objection went to the weight of the evidence, rather than to its admissibility. The evidence, including the physical facts and surrounding circumstances, we think, strongly point to death by accident, rather than by suicide, and while we think the objection should have been sustained, we cannot say, particularly in the absence of the instructions, that in overruling the objection the court abused its discretion, or that defendant was prejudiced thereby.

(9) Three assignments refer to the admission of certain exhibits. These are identified as Exhibits 30, 35, 36, 37, 38, and 39. Exhibit 30 consisted of written memoranda found on the desk of the insured following his death. The exhibit was objected to as "incompetent, irrelevant, and immaterial." It appears that these desk memoranda were in the handwriting of the insured. We need not pause to consider the sufficiency of the very meager objection, because it appears that a witness called by plaintiff produced these memoranda and without objection read to the jury every word appearing thereon. As the complete contents of the exhibit were in evidence without objection, it can scarcely be said that it was prejudicial to admit the exhibit in evidence.

Exhibits 35 to 39, inclusive, purport to be typewritten letters written by the insured in Omaha to his wife in San Jose, Cal. They bear dates respectively February 14, 1933, February 15, 1933, February 16, 1933, February 17, 1933, and February 18, 1933. Mrs. Armstrong testified without

194

objection that she received these letters from her husband in due course of mail shortly after their respective dates. It appears from the evidence that the insured wrote a typewritten letter to his wife daily, and that she wrote him daily. The letters on their face disclose that they were part of a correspondence between the parties. They contain reference to letters received, and they contain other internal evidence of the source from which they came. They contain many references to matters which were known only to Armstrong; they are signed, "Dad." Whether a sufficient foundation has been laid for the admission of such evidence is a matter addressed to the discretion of the trial court. O. N. Bull Remedy Co. v. Clark, 109 Minn. 396, 124 N.W. 20, 32 L.R.A.(N.S.) 519, 18 Ann.Cas. 413. We think they were sufficiently identified. Hartzell v. United States (C.C.A. 8) 72 F.(2d) 569; Whalen v. Gleeson, 81 Conn. 638, 71 A. 908; People v. Adams, 162 Mich. 371, 127 N.W. 354; Wigmore on Evidence, § 2148.

2. The court, on its own motion, gave among others the following instruction to the jury:

"You are further instructed, gentlemen, that there is a legal presumption against suicide. This is based on the theory that life is dear and sweet to all of us, and that none of us would be presumed to want to leave this world before we are called. It is indulged because self-destruction is contrary to the general conduct of mankind. It shows gross moral turpitude in a sane person. And, too, there is another legal presumption that every sane person is presumed to intend the natural and probable consequences of his own acts, but you are instructed, gentlemen, that these presumptions are only legal presumptions and may be indulged in in the event that there is no evidence tending to prove the contrary, in which event these presumptions would not survive. And if you find, from a preponderance of the evidence, that the deceased, Charles D. Armstrong, intentionally killed himself, then the presumption against suicide vanishes. While on the other hand, if you find from a preponderance of the evidence, that the said Charles D. Armstrong, did not intend the natural consequences of his actions, and that he did not intentionally kill himself, then the presumption that he intended the natural and probable consequences of his own acts likewise vanishes. In other words, both of these presumptions

disappear when circumstances are adduced showing how the death occurred.

."Mr. Brumbaugh: Comes now the defendant and objects and excepts to the instruction of the Court, as given, under the heading of 'Circumstantial Evidence' for the following reasons:

"That the question of whether or not the act of suicide is one suggestive of moral turpitude or that such conception of the act is the basis for the legal presumption against suicide is contrary to the evidence here received; that there is an inherent and normal impulse in every person to commit suicide; and for the further reason that said alleged reason for said presumption is not material to the jury's consideration of the presumption but tends to discourage the jury in arriving at a conclusion that would charge the insured, Charles D. Armstrong, with committing suicide, and is, therefore, prejudicial to the defendant."

Conceding, but not deciding, that appellant's objections were well taken, there is a presumption, in the absence of the entire charge, that the jury were properly and correctly instructed.

In Myers v. Sternheim (C.C.A. 9) 97 F. 625, 626, the court said: "The only other point relied upon by the plaintiff in error arose out of exceptions to the charge of the court; but a reference to the record shows affirmatively that the plaintiff in error has brought up only a part of the court's charge, and there is nothing to indicate that the omitted portion had no bearing upon the point made. Under such circumstances, we would not be justified in reversing the judgment, even if, in the portion of the charge brought here, error appeared, since, in the portions of the charge omitted, the error, if any, may have been corrected."

It is elementary that the charge to the jury must be considered as a whole, rather than to search for technical defects, verbal inaccuracies or insufficiencies, which may appear in individual instructions or portions thereof when examined apart from the context and the other parts of the charge. S. S. Kresge Co. v. McCallion (C.C.A. 8) 58 F.(2d) 931; Travelers' Ins. Co. v. Schenkel (C.C.A. 8) 37 F.(2d) 254; Zurich General Accident & Liability Ins. Co. v. O'Keefe (C.C.A. 8) 64 F.(2d) 768; Pryor v. Strawn (C.C.A. 8) 73 F.(2d) 595. The rule is a salutary one, and its application cannot be defeated by the device of bringing up a

part of the instructions only. Error is not to be presumed, but must be made affirmatively to appear. Manifestly, appellant's objection could have been met by another instruction from the court. In United States v. Monger (C.C.A. 10) 70 F.(2d) 361, the lower court erroneously instructed the jury as to a presumption, but it also instructed the jury that the presumption was removed by the testimony offered in the case and they should base their determination on the evidence and not the presumption.

So, in the instant case, the court may have instructed, as it should have done [Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 289; United States v. Le Duc (C.C.A. 8) 48 F.(2d) 789; Fidelity & Casualty Co. v. Niemann (C.C.A. 8) 47 F.(2d) 1056], that in view of the evidence pro and con on the question at issue, the presumption had been entirely removed from the case and should be given no consideration by the jury. Assuming, as we must in view of the condition of the record, that the error in the instruction, if any, was cured by other instructions, we must hold that there is no showing of prejudicial error in this regard.

3. Chapter 84, Nebraska Session Laws 1933, approved May 10, 1933, reduced the interest rate, on contracts where no greater rate was specified, from 7 per cent. to 6 per cent. The act became effective three calendar months after the 9th of May, 1933. Insured, as has been observed, died February 18, 1933. Proofs of death were received at defendant's home office March 17, 1933. The contention is made that interest was computed at 7 per cent., rather than 6 per cent. This computation entered into the verdict of the jury. Presumably the court instructed the jury as to how to compute interest. No motion, objection, or exception was made at the trial challenging these instructions or otherwise bringing this matter to the attention of the court. No ruling of the court was asked for or obtained. The court rendered judgment on the verdict as returned. This question is not before us.

It is urged that the court erred in calculating interest on the allowance of attorney fees. The error, however, if any, was not assigned below, and cannot be here reviewed. Damico v. Firemen's Fund Ins. Co. (C.C.A. 8) 5 F.(2d) 318; Behn, Meyer & Co. v. Campbell & Go Tauco, 205 U.S. 403, 27 S.Ct. 502, 51 L.Ed. 857.

Other matters urged by counsel have been considered, but we are of the view that the record discloses no error affecting the substantial rights of the defendant; and the judgment appealed from is therefore affirmed.