## CLARK v. UNITED STATES.
### No. 14652.

United States Court of Appeals
Eighth Circuit.
March 19, 1954.

Rehearing Denied April 12, 1954.

Don O. Russell, St. Louis, Mo., for appellant.

H. Brian Holland, Asst. Atty. Gen., Meyer Rothwacks and Joseph M. Howard, Sp. Assts. to Atty. Gen., Harry Richards, U. S. Atty., St. Louis, Mo., and William J. Costello, Asst. U. S. Atty., Washington, D. C., for appellee.

Before JOHNSEN and COLLET, Circuit Judges, and NORDBYE, District Judge.

JOHNSEN, Circuit Judge.

Appellant, an undertaker in St. Louis, Missouri, was convicted of attempted income-tax evasion, 26 U.S.C.A. § 145(b), for the years 1945 to 1949 inclusive, through the filing of false and fraudulent returns. The trial was to the court, without a jury.

The indictment alleged that he had knowingly misstated his net income for 1945, as being $3,437.92, whereas it was

$46,808.98; for 1946, as being $5,423.24, whereas it was $30,267.19; for 1947, as being $6,998.34, whereas it was $12,822.-31; for 1948, as being $6,178.14, whereas it was $23,239.96; and for 1949, as being $9,381.67, whereas it was $25,236.-69. The amount of the tax which he had paid and the amount which it was claimed that he should have paid were also set out for each year. All of appellant's income was admittedly derived from his funeral business.

Each count of the indictment further undertook to show, equivalently as a bill of particulars, how the Government had arrived at its determination of net income for the year. The method employed was the same for all of the years. The computation first took the "Gross Receipts" of the business. From this was subtracted the "Cost of Goods Sold", that is, the merchandise purchased for sale. Next was subtracted "Other Business Deductions", consisting of salaries, interest, taxes, depreciation, rent, and all the other items which appellant had claimed as business expenditures in his returns. The amount remaining was treated as appellant's "Adjusted Gross Income". From this, subtraction was made of the amount of the standard deduction for non-business expenses, which the Internal Revenue Code allowed, and which appellant had used in his returns, to arrive at appellant's "Net Income".

Appellant's principal contention here is that the trial court erred in overruling his motion for acquittal, because the Government's method of computation did not legally establish that any understatement of income had been made in his returns. The gist of his argument is that the Government had improperly taken appellant's Gross Receipts as the foundation of its computation; that Gross Receipts are not the basis of income-tax liability, Southern Pacific Co. v. Lowe, 247 U.S. 330, 335, 38 S.Ct. 540, 62 L.Ed. 1142, because they may include return of capital as well as income; that here they had admittedly included reimbursements of "outlays" made by ap-

pellant on behalf of customers, for cemetery lots, clergyman's and organist's fees, extra limousines hired from outside sources, newspaper notices, etc., which were not part of the services covered by his general funeral prices; and that, in any event, while the Government claimed that all such returns of capital had been subtracted from the Gross Receipts in arriving at appellant's Adjusted Gross Income—appellant's returns having showed that he had included such "outlays" as operating expenses in his business deductions, and the Government having accepted all of the deductions so claimed by him, for purposes of its result of Adjusted Gross Income—the Revenue Agents had failed to engage in any audit to establish that appellant had in fact included all of such "outlay" expenditures in his business deductions, and that it therefore had not legally established that its computation of Adjusted Gross Income did not consist of returns of capital.

■ This argument is without any legal substance on the realities of the situation. Of course, gross income and not gross receipts is the foundation of income-tax liability, for it is only earnings, profits and gains which the statute subjects to tax. And manifestly, gross receipts can not be called gross income, insofar as they consist of borrowings of capital, returns of capital, or any of the other items which section 22 of the Internal Revenue Code, 26 U.S.C.A. § 22, has excluded from gross income. But when all of these things have duly been taken into account, no matter by what process it has been done, the amount remaining of Gross Receipts necessarily may, in its character as a result, properly reflect the taxpayer's Gross Income, which it is his duty to report.

On the Government's evidence, that is what the result of its computation amounted to in the present situation. The fact that the computation started with appellant's Gross Receipts would not prevent the result reached, no matter by what other term in accounting nomenclature it might be possible to

designate it, from legally being reflective of appellant's Gross Income for purposes of proving income-tax evasion by him.

■ The Government is not required to establish income-tax evasion by the same processes and formalities which a taxpayer is required to observe in making his return. The existence of unreported income may be demonstrated by any practical method of proof that is available on the circumstances of the particular situation. Cf. Burka v. Commissioner, 4 Cir., 179 F.2d 483, 485. And it is not necessary, in order to make a case of tax evasion, that the exact amount of such income should be established. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546. Nor is it incumbent upon the Government, in making a prima facie case of evasion to prove the non-existence of any other deductions than those which the taxpayer has claimed in his return. United States v. Link, 3 Cir., 202 F.2d 592, 593, 594. If the taxpayer legally has other deductions than those which he has so claimed, it is his privilege to show them and explain them as part of his defense. Some times the failure to claim deductions in a return may well be a part of the taxpayer's scheme to cover up his unreported income as a matter of not creating suspicion on the face of his return. It does not therefore destroy the Government's prima facie case as a matter of law that the defendant is able to develop on cross-examination of the Government's witnesses that a right to other deductions may exist, or to establish by his own evidence that such deductions do in fact exist, and especially is this true where the unreported income pointed to by the Government's evidence is reasonably capable of being found to have exceeded the amount of the unclaimed deductions. In any event, the attempt to establish unclaimed deductions as a defense against fraud in misstating income will ordinarily of itself present merely a question of fact, first as to the existence and amount of such deductions, and fur-

ther, as suggested above, as a possible ingredient in the taxpayer's intent to conceal his unreported income by partially neutralizing the face of his returns.

■ What has been said is controlling of the present situation. The Government's computation, as has been indicated, did not use appellant's Gross Receipts as his Gross Income but simply took the Gross Receipts as the starting point of its method of arriving at his Adjusted Gross Income, in convenient approach and correlation to his manner of doing business, of keeping records, and of making his returns. The Revenue Agents subtracted the cost of all the merchandise which he had bought for sale, such as caskets, etc., and thus took account of any returns of capital from this source which were involved in his Gross Receipts. As to the "outlays" which appellant had made for cemetery lots, clergyman's and organist's fees, extra limousines hired from outside sources, newspaper notices, etc., which were not covered by the general funeral price, appellant's tax returns showed that he had made deductions of such items as costs of operation or business expenses, without correspondingly, however, having treated the repayment of them by the customer as being equivalent on this basis to income resulting to him.

The Government chose, for purposes of its computation, to allow the "outlays" to stand as business expenses, and to treat the repayment of them as income, instead of eliminating them from the deductions claimed by appellant and from the Gross Receipts as technically constituting outlays and returns of capital, for the reason primarily that appellant admitted to the Revenue Agents during their investigation that on some of these items he had made a profit, in that he had received a "kick-back" or had collected more from the customer than the amount of his actual outlay, and further appellant was not able to produce any bills, check-stubs, or other record of his expenditures, except for 1949 and

part of 1948, from which it would have been possible for the Revenue Agents to determine how much the "outlay" receipts had in fact exceeded the "outlay" expenditures.

■ The result obtained by the Revenue Agents necessarily would be in the circumstances reflective of the amount of appellant's Adjusted Gross Income, assuming the correctness of the amount of the deductions allowed. And as we have said, the Government was entitled, for purposes of its prima facie case, to treat the amount of the deductions, with their inclusion of such "outlays", as being correct, if it chose to do so, because they had been so shown and declared in appellant's returns. Also, there was here no such establishment of omitted proper deductions, through cross-examination of the Government's witnesses or on the evidence of appellant, as legally destroyed the Government's prima facie case of existence of unreported taxable income and of willfulness in connection therewith.

■ Appellant further argues, however, that the evidence was legally insufficient to establish that such understatement of income as may have occurred was willful. The evidence showed that appellant's returns purported to have been prepared by an accountant, but that the fact was that appellant did not give the accountant access to his records but merely submitted figures to him, for preparation of the returns, which appellant compiled himself; that, both during the investigation and on the trial, appellant had never been able to explain or demonstrate from his records or otherwise how he had gotten the receipts figures which he gave the accountant; that, while appellant maintained four books or records in the operation of his business (a funeral record book; a cash receipts book; a journal showing receipts from ambulance and limousine rentals and stillborn burials; and a loose-leaf book of receipts from hearse loans to other undertakers) he gave the Revenue Agents,

when they began their investigation, in response to their request for his books and records, only his funeral record book, told them that he had no other record of his receipts, and declared that the book correctly and completely showed all the receipts of his business, which it did not; that similarly when the Revenue Agents inquired about his bank account, he gave them the name of only one bank, and failed to give them the names of three other banks, in which he had an account; that his standard of living indicated an expenditure of money far beyond the amount of the net income which he showed in his returns; and that he was throughout the investigation and on the witness stand evasive or equivocal in much of what he said. All of these items of evidence were clearly relevant and sufficient to warrant the jury in making an inference of willfulness. Cf. Spies v. United States, 317 U.S. 492, 499, 500, 63 S.Ct. 364, 87 L.Ed. 418.

It is next contended that the court erred in admitting in evidence Exhibit Nos. 18 and 19, which were conflicting statements of gross receipts purporting to have been filed by appellant with the Office of the License Collector of the City of St. Louis, Missouri, as a basis for obtaining his undertaker's license. The ordinances of the City of St. Louis required an undertaker to file a statement of the gross receipts of his business for the previous fiscal year, in order to obtain his annual license. Both exhibits constituted statements of purported gross receipts, typed on appellant's business stationery. Neither of them was signed, but the ordinance does not appear to so require. Exhibit 18 purported to show appellant's gross receipts for the fiscal year July 1, 1948 to June 30, 1949. Exhibit 19 purported to show appellant's gross receipts for the calendar year 1949. The monthly receipts shown in Exhibit 19 were identical with the figures which appellant had given his accountant as the basis for preparing his 1949 tax return. The receipts shown in Exhibit 18, however, were substantially

larger and corresponded closely to those appearing in his cash receipts book.

The only argument that merits consideration in relation to the Exhibits is that no sufficient foundation was laid for their admission. The Government offered them as being admissions on the part of appellant. The sufficiency of the foundation on this basis, to establish their identification or authenticity as having been prepared by appellant, was a matter for the discretion of the trial court. Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 85 F.2d 187, 194. And that discretion was not here abused.

The Exhibits were produced in court by the Assistant Chief Clerk in the License Collector's Office as part of the files of that Office. They did not bear any filing stamp, but the witness testified that no stamping or other official indication of filing was made as to any such licensing statements. The Revenue Agents testified that they had obtained the Exhibits from the License Collector's Office during the course of their investigation and had later returned them, but that, while they were in their possession, they had shown them to appellant in an effort to have him explain the discrepancy between them and he had admitted that the statements had been prepared and submitted by him as a basis for obtaining his license. He was interrogated under oath by the Revenue Agents and the sworn statement which he gave was introduced in evidence. In it he had said, among other things, as to the Exhibits: "I do not know how I arrived at these figures. I do not know why they are different * * I don't know why I did not get the same figure * * * I will be frank with you, just as frank as I can. I have no explanation for anything."

On all of this, there is no basis to argue that the Exhibits were not legally entitled to be received in evidence. The question was not as to the admissibility of their contents as official statements or records, as appellant argues, but simply as to the sufficiency of their identification or authenticity as being statements of appellant. The elements as to their official character were merely incidents in the identification of them as personal statements.

The contention also is made that the court erred in sustaining the Government's objection to various exhibits prepared by expert accountants for appellant and to the testimony of such accountants in relation to the exhibits. The object and effect of this proffered evidence was to demonstrate that a return of appellant's income for each of the years on an accrual instead of a cash basis would not leave any such great amount of unreported income as the Government claimed. The court excluded the evidence on the ground that, on the face of the returns, the testimony of appellant himself, and the other circumstances appearing in the situation, it was indisputably clear that appellant had been reporting his income on a cash basis and not on an accrual basis, and that any hypothesizing of facts which had no probative basis was therefore wholly irrelevant and incompetent as a defense to the charge. Plainly, on the record, the court's ruling was proper.

One other contention is entitled to notice and mention. It is argued that it was error for the court to admit Exhibits Nos. 6 and 7, which consisted of two "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax" forms (Form 870, U. S. Treasury Department) which appellant had executed and given the Revenue Agents during the course of their investigation, in accordance with section 272 (d) of the Internal Revenue Code, 26 U. S.C.A. § 272(d). The signing of such a waiver by a taxpayer is without any effect to preclude him from maintaining a civil suit for refund of the taxes assessed by the Commissioner on the basis of it. Payson v. Commissioner, 2 Cir., 166 F.2d 1008, 1009; Herber v. Jones, D.C.W.D.Okl., 103 F.Supp. 210, 214, affirmed, 10 Cir., 198 F.2d 544. Much less then is such a waiver entitled to have any effect to convict a taxpayer on a

criminal charge of evasion. See also Annotation, 11 A.L.R.2d pages 903, 907, 912, 915.

 The Exhibits therefore should not have been received in evidence as having legal probative quality. But appellant is not entitled to a reversal for this error. The case is not one that was tried to a jury. The evidence is overwhelmingly convincing of appellant's guilt to anyone reading the record. The court did not refer to the waivers in its detailed findings of fact. And there is nothing else in the proceedings to suggest that the court in any way relied upon or attached weight to the waivers as a factor in its convicting of appellant. On these circumstances, we do not think that it can reasonably be said that any substantial right of appellant has been affected as a matter of either process or result. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.

Affirmed.